## George R. Hurlbut *vs.* Peter McKone and others.

Hartford District, Oct. T., 1886. PARK, C. J., CARPENTER, PARDEE, LOOMIS and GRANGER, Js.

Upon the question whether a business carried on by the defendant near the dwelling house of the plaintiff is a nuisance, it is not a sufficient defence that the business is in itself lawful and the use made by the defendant of his own property is in itself reasonable. The reasonable use is to be determined in view of the rights of others.

It is not enough that the place is one in the vicinity of which there is a large number of manufacturing establishments, and that the neighborhood is largely occupied by mechanics and laboring men.

It is not enough that the plaintiff went to reside in the house in which he lives after the adjoining proprietor had established the nuisance, nor that he built the house there on his own land after the nuisance was established.

The homes of mechanics and laboring men are none the less entitled to
protection from nuisances caused by manufacturing establishments,
because they themselves work at trades which make noise, smoke and
cinders.

Where, in a suit for an injunction against the continuance of the nuisance
and for damages, the court found certain facts with regard to the intol-
erable character of the nuisance which went beyond the facts alleged
in the complaint, it was held that, as the court, upon the prayer for an
injunction, had a right to consider all the facts of the case, it would be
presumed, in the absence of proof to the contrary, that the evidence of
those unalleged facts was limited in its effect by the judge to the mat-
ter of the injunction, and was not considered by him in assessing the
damages.

[Argued October 8th, 1886—decided February 4th, 1887.]

SUIT for an injunction against the continuance of a nuis-
ance and for damages; brought to the Superior Court in
Hartford County.    The complaint alleged the plaintiff's
ownership of a house and lot on Governor street, in the
city of Hartford, and his occupancy thereof as a residence;
and that the defendants, in May, 1884, owned and possessed
a lot of land on Sheldon street, adjoining the plaintiff's lot,
and erected thereon a wooden building, some sixty by thirty
feet and two stories high, within a few inches of the plain-
tiff's lot, one end of which is about twenty feet from the
plaintiff's wooden dwelling-house, and the other two feet
from his barn, and put therein a steam engine, circular band
and cut-off saws, planing, molding, mortising and variety
molding machines, and have ever since owned and operated
said machines in their business of builders, and in so doing
have used said machines daily; and that the use of said ma-
chines makes so loud a noise as to render it impossible, while
they are being operated, to hear ordinary conversation in
the plaintiff's house, and when operated together the noise
is intolerable, and from their use dense volumes of smoke
and cinders fill the plaintiff's house and premises, and cause
great discomfort to him and his family, and by the noise,
smoke and cinders the plaintiff and his family are harassed,
annoyed, their health endangered, and the premises ren-
dered uncomfortable and unfit for habitation, and his car-

pets, furniture and clothing soiled and damaged, and his property greatly reduced in value.

The case was heard before *Andrews, J.*, who made the following finding of facts: The plaintiff and the defendants are respectively the owners and in the occupation of the lots of land of which they are severally described in the complaint as being the owners. The land of the defendants abuts on the lot of the plaintiff, so that the southeast corner of the defendants' land is only twenty-one feet from the plaintiff's house. The plaintiff occupies the lower part of his dwelling-house for himself and family; the upper part he rents to tenants. In the summer and fall of 1884 the defendants erected on their lot, close to their easterly and southerly line, a two-story wooden building, in which they placed a steam boiler and engine to supply motive power for various machines, which also they placed in the building, and which they have continued to operate from that time to the present time, namely, two planing machines, a moulding machine, a mortising machine, a cut-off saw, a buzz-saw, and a whip-saw. The defendants are contractors and builders, and use the machinery in their own business. They employ steadily but two men in operating the machines. At times, however, when there is a pressure in their business, they employ more, sometimes as many as five or six. The machinery is used only in the day time, between the hours of six in the morning and six in the afternoon. They use the shavings and saw-dust from their machines for fuel to generate steam. Such light and combustible fuel makes a great deal of smoke and cinders. The machinery, whenever it is in motion, makes much noise; so great is the noise of the machinery, and so near is it to the plaintiff's house, that when it is in motion it is impossible for the plaintiff or the members of his family to read, write or carry on conversation without great difficulty. It causes the house to jar so that the windows rattle in the casings; dishes and other like things standing on the table or on shelves will shake and jolt together. The health of the plaintiff and his family has been injured. A tenant in the

house, a Mrs. Whiting, was sick there and died.   Her medical attendant testified in court that she suffered greatly from the noise of the defendants' machinery, and that her disease was aggravated and her death hastened by it.   The wife of the plaintiff, being in a delicate state of health, has suffered very much from headaches caused by the noise.   The value of the house has been and is greatly impaired, especially its rental value.   The plaintiff has been unable to procure tenants, and such as he does procure are unwilling to pay as much rent as he before received.   The smoke and cinders from the defendants' chimney came into the plaintiff's yard and into his house whenever a door or a window was opened. Clothes in the yard hung out to dry were made foul so that they had to be washed again.   Everything in the house was soiled—the floors, carpets, walls, windows, curtains, and even the table on which they ate their meals.   Upon more than one occasion the plaintiff and his family were unable to to eat the meal which had been prepared for them, so dense and noisome was the smoke which came into the house from the defendants' mill.   In some or all of these ways the plaintiff has been troubled, annoyed, injured, discomforted, and distressed, and the house made almost uninhabitable, ever since the defendants erected their mill.

Sheldon street, on which the defendants live, runs east from Main street to Commerce street.   On this street there are various manufacturing establishments in which machinery is used.   The property next west of the defendants' premises is owned by the National Screw Company.   This property runs clear across from Sheldon street to Charter Oak street, and at the rear of the plaintiff's lot.   It is occupied by various tenants engaged in various manufacturing enterprises, to wit: American Paper Barrel Company, Bailey Letter Press Company, Capewell Horse Nail Company, Mather Electric Light Company, Strickland & Shay's sawing, turning and planing mill, and Ricken's planing and moulding mill.   In the latter mill, which is immediately in the rear of the defendants' premises (but with other buildings between), and distant about one hundred and fifty feet,

are two planing machines of much greater size and power than the planer of the defendants. The noise made by a planing machine does not depend upon the size or the power of the machine, but upon the width of the board which is being planed.

Within one thousand or fifteen hundred feet of the defendants' premises there are a number of other manufacturing establishments, and the neighborhood within the distance above stated is largely occupied by mechanics and by tenement houses.

The noise made by the defendants' machinery when running is perhaps less than some of the other noises made within the neighborhood. A noise, however, may be an extreme and perhaps an intolerable nuisance to one who lives within a few feet or yards of it, while to a person a little removed, especially if other objects intervene, although he is within reach of the sound, it may be of no inconvenience at all.

Since the commencement of this suit the defendants have re-set their boiler and engine, and have built a large and high smoke-stack, so that the annoyance to the plaintiff from smoke and cinders is mostly, but not quite wholly, abated.

Upon these facts the court assessed the damages at one thousand dollars, but in view of the change made by the defendants in the mode of operating their works, held the injunction prayed for to be unnecessary and did not grant it. The defendants appealed.

*H. C. Robinson* and *E. H. Hyde, Jr.*, for the appellants.

If the court is of the opinion that the defendants are concluded by the finding, so that they cannot say there has been no nuisance, it is still clear that the judge has included elements in his basis of judgment which are not grounds of damages, and as it is impossible to say how much weight has been attached to things irrelevant, a new trial must be awarded. The judge also evidently estimated damages to come, and this was error unless this judgment will bar

another suit and have the effect of a license to the defendant to maintain their shop. The rule is that in the case of a continuing nuisance, damages only to the date of the writ can be recovered. *Cumberland Canal Co.* v. *Hitchings,* 65 Maine, 140; *Bigley* v. *Nunan,* 53 Cal., 403. As the court has not found any negligent use of machinery in the defendants' shop, in the matter of unreasonable hours, or by use not required by the demands of trade, we must find the nuisance, if at all, either in the use of steam power in the city, and on a manufacturing street at that, as a nuisance *per se,* or we must find it in the special facts found by the court, and all the facts found must be regarded here as moving the judicial mind below. No person can claim that the defendants' use of the property is a nuisance *per se.* We submit that the facts show that the court punished the defendants by considering as elements of damage injuries which are not actionable.

1. As to the injury to the health of the plaintiff and his family. We look in vain to find in the complaint any allegation to that effect. It alleges that the plaintiff's health is endangered as a ground for an injunction, but does not allege that it had been injured as a ground for damage. Clearly the court erred in this respect.

2. As to the depreciation in the value of the real estate. It is certain that to entitle the plaintiff to recover, some legal right of his must have been violated or infringed by the defendants. Wood on Nuisances, §§ 7, 16, 896. And no one will claim that a man has an absolute legal right to insist that the value of his property shall not be diminished by his neighbor's use of his. The market value of a valuable residence might easily be greatly impaired by the erection of a large tenement house in near proximity to it, but no one will pretend that the owner of the residence would have a right of action against the owner of the tenement house to recover his damages. There is a class of cases where the nuisance complained of works a destruction of, or causes a positive tangible injury to, the adjoining property, permanent in character, and in these cases the rule of damages undoubt-

edly is the difference in value of the property in question. Wood on Nuisances, § 887. But when the nuisance is not of a permanent character, and the injury consists of personal or physical discomfort and annoyance, which will be done away with by the removal of the nuisance, the decrease in value of the property, the occupants of which are subjected to such discomfort and annoyance, cannot be taken into consideration in fixing the amount of damages, for the reason that such reduction of value is only temporary, and to-morrow the nuisance may be discontinued and the value fully restored. *Cumberland Canal Co.* v. *Hitchings*, 65 Maine, 140; *Hopkins* v. *Railroad Co.*, 50 Cal., 190; *Bigley* v. *Nunan*, 53 id., 403. So that in the case at bar, unless this court is of opinion that this judgment is to have the effect of a license to the defendants to maintain their shop, as the temporary impairment in the value of the plaintiff's property may be restored by the shutting down of the defendants' machinery, the court below improperly took into consideration the temporary depreciation of value in fixing the amount of damages.

3. As to the annoyance and discomfort produced by the noise and vibration of the machinery. Again we have to consider what is the legal right of the plaintiff to freedom from noise, because no amount of annoyance or discomfort will give him a cause of action unless some legal right of his has been violated. No man is entitled to absolute and perfect quiet in the enjoyment of his property, but the degree of quiet which he may insist upon as a legal right largely depends upon the general character of his particular location and surroundings. Wood on Nuisances, §§ 9, 10. In *McCaffry's Appeal*, 105 Penn. St., 253, the court lays down the rule as follows: " A person who resides in the centre of a large city must not expect to be surrounded by the stillness which prevails in a rural district. He must necessarily hear some of the noise and occasionally feel slight vibrations produced by the movement and labor of its people, and by the hum of its mechanical industries." There is another sensible distinction which has often been overlooked in nui-

sance cases, and that is that when a nuisance produces a material injury to property the owner always may recover damages, but when the nuisance produces only personal and physical annoyance and discomfort, the right of action is not absolute, but depends upon the character of the place in which they occur. Lord Chancellor WESTBURY in *St. Helen's Smelting Co.* v. *Tipping*, 11 House of Lords Cases, 642, makes the distinction very plain. He says : " In matters of this description it appears to me that it is a very desirable thing to mark the difference between an action brought for a nuisance upon the ground that the alleged nuisance produces material injury to the property, and an action brought for a nuisance on the ground that the thing alleged to be a nuisance is productive of sensible personal discomfort. With regard to the latter, namely, the personal inconvenience and interference with one's enjoyment, one's quiet, one's personal freedom, anything that discomposes or injuriously affects the senses or nerves, whether that may or may not be denominated a nuisance, must undoubtedly depend greatly on the circumstances of the place where the thing complained of actually occurs." In the case at bar there is no pretense that there is any tangible material injury to property. The injury complained of consists wholly of personal discomfort and inconvenience caused by the prosecution of the defendants' trade at reasonable hours, in a proper manner, on a manufacturing street, in a neighborhood that for years has been given over to mechanical industries, in the midst of many larger manufactories, and under the eaves of a large establishment in which many machines of much larger power than the defendants' are running constantly and sending forth over the entire neighborhood much greater noises than those from the defendants' shop. We submit that the circumstances of his location are such as to compel the plaintiff, in the interest of trade and commerce, to submit to the annoyances and discomforts of which he complains. As to the complaint on account of smoke and cinders, the same rule obtains that prevails in respect to discomfort caused by noise.

Hurlbut *v.* McKone.

*C. H. Briscoe* and *C. A. Safford*, for the appellee.

1. The question of a nuisance is one of fact and not of law, and has been disposed of as such by the court below. *Burnham* v. *Hotchkiss*, 14 Conn., 318; *Stowe* v. *Miles*, 39 id., 426.

2. It is not found that the plaintiff went of his own choice to reside in the place where he did. He had no choice. He owned the premises and was not able to rent them on account of the nuisance. But if it were otherwise he would not be without legal redress. The doctrine that he who is first in point of time in the occupancy of his estate is first in point of right, and thus those who go to a nuisance are remediless, was long since exploded in England. *St. Helens Smelting Co.* v. *Tipping*, 11 H. L. Cas., 642; *Crump* v. *Lambert*, L. R., 3 Eq. Cas., 409. And it never had an existence in this country. *House* v. *Metcalf*, 27 Conn., 639; *Brady* v. *Weeks*, 3 Barb., 159; *Smith* v. *Phillips*, 8 Phila., 10; *Com.* v. *Upton*, 6 Gray, 473; *Mulligan* v. *Elias*, 12 Abb. Pr. (N. S.), 259; *Campbell* v. *Seaman*, 63 N. York, 568.

3. The defendants claim that in fixing the amount of damages the court included damage which was not actionable. If there are any good causes of action alleged, and judgment is rendered on the complaint, but without a specific showing for what causes the damages are awarded, this court will presume that they were given for the injuries which were legally actionable; especially so when the defendants made no request for a separation of the good from the bad. It must not be understood, however, that we assent to this claim of error in any particular. Every injury alleged in the complaint was legally actionable. Noise, smoke and cinders, producing injury or discomfort, have ever been held actionable. So has either cause alone. These were the causes of action alleged.

4. The defendants are not protected by the fact that the neighborhood is one largely occupied by mechanics and tenement houses, and that there are other manufacturing establishments near. Such a claim is not recognized as sound by the courts of this or any other civilized country. *Ross*

v. *Butler*, 19 N. Jer. Eq., 294; *Cleveland* v. *Citizens' Gas Co.*, 20 id., 210; *Meigs* v. *Lister*, 23 id., 199; *Robinson* v. *Baugh*, 31 Mich., 290; *McKeon* v. *See*, 4 Robertson, 469; *S. C.*, 51 N. York, 300; *Mulligan* v. *Elias*, 12 Abb. Pr. R. (N. S.), 259; *St. Helen's Smelting Co.* v. *Tipping*, 11 H. L. Cas., 642; *Crump* v. *Lambert*, L. R., 3 Eq. Cas., 409; *Bamford* v. *Turnley*, 3 Best & Smith, 62.

Loomis, J.   This is a complaint for an injunction, and for the recovery of damages on account of an alleged nuisance erected and continued by the defendants on their own land, adjacent to the plaintiff's dwelling house.

The trial court found the issue for the plaintiff and assessed his damages at one thousand dollars; but, pending the suit, there was such a change made by the defendants in the mode of operating their works as to render the preventive remedy asked for unnecessary, and therefore the injunction was denied.

The eight errors assigned may, for the purposes of this review, be reduced to two, namely:—That the facts found will not sustain any judgment for the plaintiff; and that the court entertained improper elements of damage, which increased the amount of the judgment.

1. Under the first head the question is, whether the existence and operation of the defendants' steam planing mill in the manner in which it was conducted and located, so materially interfered with the comfort and enjoyment of the plaintiff and his family in their dwelling house as to constitute a nuisance?   The finding of the court is so full and strong on this point that it would seem conclusive.   It is as follows:—" The defendants use the shavings and saw-dust from their machines for fuel to generate steam. Such light and combustible fuel makes a great deal of smoke and cinders. The machinery of the mill, whenever it is in motion, makes much noise; so great is the noise of the machinery, and so near is it to the plaintiff's house, that when it is in motion it is impossible for the plaintiff or the members of his family to read, write, or carry on conversation without great diffi-

culty. It causes the house to jar so that the windows rattle in the casings; dishes and other like things standing on the table or on shelves will shake and jolt together. The health of the plaintiff and his family has been injured. A tenant in the house, a Mrs. Whiting, was sick there and died. Her medical attendant testified in court that she suffered greatly from the noise of the defendants' machinery, and that her disease was aggravated and her death hastened by it. The wife of the plaintiff, being in a delicate state of health, has suffered very much from headaches caused by the noise. The value of the house has been and is greatly impaired— especially its rental value. The plaintiff has been unable to procure tenants, and such as he does procure are unwilling to pay as much rent as he before received. The smoke and cinders from the defendants' chimney came into the plaintiff's yard and into his house whenever a door or a window was opened. Clothes in the yard hung out to dry were made foul so that they had to be washed again. Everything in the house was soiled—the floors, carpets, walls, windows, curtains, and even the table on which they ate their meals. Upon more than one occasion the plaintiff and his family were unable to eat the meal which had been prepared for them, so dense and noisome was the smoke which came into the house from the defendants' mill. In some or all of these ways the plaintiff has been troubled, annoyed, injured, discomforted, and distressed, and the house made almost uninhabitable, ever since the defendants erected their mill."

This surely was no trifling inconvenience which the civilities of good neighborhood, in a thickly settled and industrious community, required the plaintiff to bear in silence, nor was it a matter painful merely to a cultivated taste, but the finding makes it, beyond all controversy, a matter of great physical discomfort, powerfully affecting the comfortable enjoyment of the plaintiff's home, and impairing the health of his family and the value of his property.

But it is suggested that the defendants' business was *per se* lawful, and the use made of their own property was reasonable.

We concede that the law will not interfere with a use that is reasonable. But the question of reasonable use is to be determined in view of the rights of others. Even a cooking stove may be so located and used as to make it a nuisance to the adjacent proprietor, as in *Grady* v. *Wolson*, 46 Ala., 381. The owner may erect buildings with chimneys and build fires therein in a proper manner, because these are among the necessary incidents to such property, but he has no right to burn fuel in the making of such fires that develops dense masses of smoke to the injury of his neighbor, nor to build his chimneys so as to send the smoke into his neighbor's house. Wood on Nuisances, sec. 432.

It is further said that the place in question was a manufacturing locality, and that the plaintiff's annoyances and damage were only such as were incident to the neighborhood where he had elected to reside.

In determining whether the defendants violated any just rights of the plaintiff, the location and surroundings are to be considered, for it is undoubtedly true that what constitutes a nuisance in one locality may not be in another, and we can fully accept the rule laid down in *McCaffrey's Appeal*, 105 Penn. St., 253: "A person who resides in the centre of a large city must not expect to be surrounded by the stillness which prevails in a rural district. He must necessarily hear some of the noise and occasionally feel slight vibrations produced by the movement and labor of its people and by the hum of its mechanical industries."

And if we should adopt the distinction laid down by Lord Chancellor WESTBURY in *St. Helen's Smelting Co.* v. *Tipping*, 11 H. L. Cases, 650, cited by the defendants, between a nuisance producing a material injury to property, where the right of action is absolute, and an alleged nuisance which produces merely personal annoyance and discomfort, where the right of action depends " greatly on the circumstances of the place where the thing complained of occurs," we still think there is no authority that would deny a right of action under the facts and circumstances of this case as described in the finding. The vivid language of THOMPSON,

J., in delivering the opinion in *Dennis* v. *Eckhardt*, 3 Grant, 302, with slight changes would seem to describe this case : " Some discomforts must be endured as compensation for the conveniences of city life * * * but I cannot find authority in law for saying that a thing which fills the atmosphere that others have a right to live in with offensive smoke and odors, stifles the breath, produces nausea and headache, * * * prevents the drying of clothes and ventilation of houses, darkens the sunlight, and converts pleasant residences into prison-houses in dog-days, and defiles carpets, curtains and dinner plates with deposits of soot and dirt, is not a nuisance, even though the results are only occasional."

The claim of the defendants that the locality is one " given over to mechanical industries," is not in full accord with the finding.    The plaintiff's house is on Governor street, and on this street there is no claim that there are any manufacturing establishments.    There are such on Sheldon street, and it is found that " within one thousand or fifteen hundred feet of the defendants' premises there are a number of other manufacturing establishments, and the neighborhood within the distance above stated is largely occupied by mechanics and by tenement houses."    All these manufacturing establishments are of course still more remote from the plaintiff's house, and the distance obviously is so great as to preclude any annoyance from smoke, cinders or the jar of machinery, and the noise must be so softened that it could not well be a nuisance.    All the discomfort which the plaintiff can suffer therefore, of the kind referred to, must come from the establishment of the defendants, only twenty-one feet distant from his house.    It is probably in the power of the defendants, without great expense, to avoid all just ground for complaint. The court finds they have already done so, mostly in respect to smoke and cinders.

In regard to the suggestion that the plaintiff elected to reside in this locality, there is nothing to show that the objectionable business of the defendants had ever been carried on before the plaintiff took possession, but rather the contrary, for they did not build till 1884.    If, however, it were other-

wise, and the plaintiff knew of the nuisance, and then went and took up his abode near it, he would not thereby be precluded from maintaining his action. A man is not to be precluded from building and living on his own land because the adjoining proprietor first erected a nuisance, which indeed was no nuisance till somebody went there to live. *Hale* v. *Barlow*, 27 L. Jour., C. P., 208; *Commonwealth* v. *Upton*, 6 Gray, 473; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. R., 659. In regard to any suggestion arising from the fact that the dwelling houses in the vicinity are largely occupied by mechanics and tenants, we fully approve and adopt the language of Chancellor ZABRISKIE in delivering the opinion in *Ross* v. *Butler*, 19 N. Jersey Eq., 294: " I find no authority that will warrant the position that the part of a town which is occupied by tradesmen and mechanics for residences and carrying on trades and business, and which contains no elegant or costly dwellings, and is not inhabited by the wealthy and luxurious, is a proper or convenient place for carrying on business which renders the dwellings there uncomfortable to the owners and their families, by offensive smells, smoke, cinders or intolerable noises, even if the inhabitants themselves work at trades occasioning some degree of noise, smoke and cinders. There is no principle in law or reason which would give protection to the large comforts and enjoyments with which the wealthy and luxurious are surrounded, and fail to secure to the artisan and laborer and their families the fewer and more restricted comforts which they enjoy."

2. The remaining question is, whether there entered into the judgment any improper elements of damage.

The defendants say, in substance, that the court assessed damages for injuries not actionable, but what injuries are referred to the assignments of error do not mention at all. This amounts to no more than a general assignment of error, which is contrary to the rule on this subject, and might be disregarded, but as the defendants were heard in argument upon the question it may be more satisfactory to dispose of it upon its merits.

Resorting then to the oral argument before this court to

supply the omission referred to, we find that after a critical analysis of the finding the counsel for the defendants are able to specify a few particulars wherein the court, in describing the effects of the nuisance, went beyond the allegations in the complaint; for instance, the complaint, in referring to the effect upon the health of the plaintiff and his family, says simply that it was endangered, whereas the finding is that it was injured; also, where the complaint only speaks of the effect of the running of the defendants' machinery as causing an intolerable noise, making it impossible to hear conversation, the finding states, in addition, that it caused the house to jar and made the windows rattle and the dishes jolt together. Now, without stopping to show how far these facts might come in under the general allegations of the complaint in respect to being harassed, annoyed and made uncomfortable and the house being made unfit for habitation, we may concede, for the purposes of discussion, that in the two particulars mentioned, the finding specifies injuries not specifically alleged, and our answer is, that the inference attempted to be drawn therefrom, that the court gave damages for those additional injuries, is unwarrantable. It should be borne in mind that the suit was for an injunction and also for damages, and the evidence to be received and the facts to be found and made part of the record had reference necessarily to both remedies.

All the necessary effects of running the defendants' machinery in close proximity to the plaintiff's house were to be inquired into upon the trial, in order to determine whether it was a nuisance, and whether it was such an one as to demand the extraordinary remedy of an injunction. The facts referred to, therefore, had a proper office to perform. " Health endangered " was perfectly established when the court found health actually injured; for the greater must include the less, and health injured was a much stronger reason for an injunction, as the nuisance if continued might result in the permanent impairment of health. So as to the other fact, if the machinery operated with such tremendous power as to jar the house itself, the court not only would see how intense

and intolerable the noise must have been, and that the allegation in that respect was true, but that the necessity for an injunction was more urgent on that account. Now, our conclusion is, that as all the facts referred to had a perfectly legitimate office to perform in the mind of the trial judge, it is to be conclusively presumed, in the absence of any evidence to the contrary shown by the record, that they were so applied. This principle has often been invoked to prevent a new trial for an alleged improper admission of evidence, where there was a general objection at the time and the court received the evidence but gave no indication as to the use to be made of it, and where for one purpose it would have been proper, but for another very improper. The party in such cases is never allowed to say it was used for the improper purpose. The analogy is perfect, only in the case at bar there is stronger reason to apply the principle, because there was no objection at all to the facts in the court below, and yet, in effect, we are asked to reverse the presumption and hold that where facts had a legitimate and an illegitimate purpose it must be conclusively presumed in favor of the latter. We cannot accede to such an extraordinary demand.

There was no error in the judgment complained of.

In this opinion the other judges concurred.