By the Court.—McAdam, J.
The covenant was not a conveyance within the statutory meaning of that term, respecting the acknowledgment of convejmnces by married women. (1 R. S., 758, sec. 10.) It did not purport to grant or convey any estate and none passed or was intended to pass by it.
It is somewhat analogous to the right conferred in McLarney v. Pettigrew, 3 E. D. Smith, 111, in which it was held that an agreement, that beams might be inserted in the wall of plaintiff’s house, for the permanent support of the adjoining house, did not convey an interest in real estate and did not require a writing. The same principle has been applied to party walls. Bosworth, J., in Maxwell v. East River *348 Bank, 3 Bosw. 146, said: “We regard it as settled law, that when the owners of adjoining lots agree, though verbally, that each will erect a building or store on his own lot, and that the dividing wall shall be a party wall, and shall be used. to support the beams and roof of each building, and they build according to such agreement, and with a view to execute it, neither can remove or do anything to impair the ability or sufficiency of such wall, so long at least, as the buildings continue in a condition to subserve in every substantial respect the uses for which they were erected.” The covenant executed by Mr. and Mrs. Alvord and their neighbors indicated no purpose to convey. Its object is expressed in these words. “ The parties to these presents have agreed with, each other to improve their said lots * * * # by leaving eight feet * * * * 0n the front thereof as an open space or court.” It' was intended to insure uniformity of construction in the entire block, that one might build his house back, eight feet, without having the light, air or vision cut off by projecting buildings on either side, and the execution of the plan in. consummation of the understanding was all that was necessary to make it binding on those who agreed to it, or their successors in interest or estate.
Such an agreement is a wise and beneficent one, alike beneficial to all the adjoining owners. . The agreement was made July 14, 1846, and though the title stood in the name of Mrs. Alvord, the husband, under then existing laws, had by virtue of his marital right, the jus disponendi of the property .until his marital relation ceased. He and his wife joined in the execution of the .covenant. The record shows a proper acknowledgment by him, but the certificate as to her is not in conformity to the technical requirements of the then existing statute, in regard to the form of acknowledgment required by a married *349 woman. The objection to the defective acknowledgment is personal to her, for she might at any time have corrected it by a new acknowledgment or deed of confirmation, which by way of ratification would have related back to the time when the act needing confirmation was performed. No intervening right or equity prevents this from being done now if it were necessary, but it is not. Mrs. Alvord is still living, but has never repudiated the covenant and does not seek to do so. The houses on the block have been built over thirty years and all in conformity to the covenant. Alonzo A. Alvord, the husband, did not die until 1862, and the houses were therefore erected and the agreement consummated during the life of the husband, whose agreement even regarded as a conveyance, was valid, while he lived, by virtue of his exclusive right of control and of sale. (Ewells Leading Cases, 478; 2 Kent's Com. 132; Vartie v. Underwrood, 18 Barb. 566.) When the covenant was executed the land of the Alvords received a benefit, and on it was created a corresponding charge which, like other D charges recognized in equity, becomes effective when declared so by the courts. (2 Bishop on Married Women, 212.) A wife even under the then existing law might, by her sole act, charge her estate in equity under some circumstances in which she had not the power of conveyance. (Ib. Story's Eg. Jur., 1399, and see cases collated in Voorhies Code of 1859, p. 173.) She charged it in this instance. It needed no conveyance or writing, to create the easement, even if the right conferred arises to the dignity of that title. The act or consent of those in interest was sufficient. This is established by the case of Tallmadge v. The East River Bank, 2 Duer, 614, affd. 26 N. Y. 105, where the equity in regard to the manner of improvement and occupation of certain land grew out of a parol contract made by the owner with the purchaser, and *350 it was held binding upon a subsequent grantee with notice, although his legal title was absolute and unrestricted.
This case reviews many authorities and quotes Chancellor Cottenham assaying, that where a covenant of this character has been entered into it would be most “ unjust and unconscientious ” not to enforce it. The opinion also quotes the case of Brewer v. Marshall, 4 C. E. Green, W. Eq. 537, wherein the court agrees with Chancellor Cottenham in saying, that “ it will be found upon examination that these decisions proceed upon the principle of preventing a party having knowledge of the just rights of another from defeating such rights, and not upon the idea that the engagements enforced, create easements or are of a nature to run with the land.”
Tallmadge v. East River Bank (supra), maintains this doctrine in its strongest aspect. In that case Davis exhibited a plan of intended location of lots on St. Mark’s Place, showing that the houses Avere to be set back eight feet. No mention of this whatever was made in the conveyances. The court held that, “ It is to be presumed that they would not have bought and paid their money except upon this assurance. It is to be presumed that relying upon this assurance, they paid a larger price for the lots than otherwise they would have paid. Selling and conveying the lots under such circumstances and with such assurances, though verbal, bound Davis in equity and good conscience to use and dispose of all the remaining lots so that the assurances upon which Maxwell and others bought their lots could be kept and fulfilled.' This equity attached to the remaining lots so that any one subsequently purchasing from Davis any one or more of the remaining lots, with notice of the equity existing between Davis and Maxwell and others, the prior purchasers, would not *351 stand in a different situation from Davis, but would be bound by that equity.”
And the court further held “ that the uniformity of the position of all the houses on St.- Mark’s Place was probably sufficient alone to put the defendant on inquiry.” (See, also, Maxwell v. East River Bk., 3 Bosw. 124 ; Perkins v. Coddington, 4 Robt. 647 ; Green v. Creighton, 7 R. I. 1.)
One of the leading cases on this subject is Whitney v. Union Railway Company, 11 Gray (Mass.), 363, where the same opinion is held in the following language : u In like manner, by taking an estate from a grantor with notice of valid agreements made by him with the former owner of the property, concerning the mode of occupation and use of the estate granted, the purchaser is bound in equity to fulfil such agreements with the original owner, because it would be unconscientious and inequitable for him to set aside and disregard the legal and valid acts and agreements of his vendors in regard to the estate, of which he had notice when he became its purchaser. In this view the precise form or nature of the covenant or agreement is quite immaterial. It is not essential that it should run with the land.”
The authorities, however, in this state go so far as to hold that these covenants run with the land, and without an assignment of the covenants, are enforcible ; and any owner as well as occupant can enforce the right. Trustees, etc., v. Cowen, 4 Paige, 511; Brouwer v. Jones, 23 Barb. 153.
One of the grounds upon which this right is put is, “ when it appears by a fair interpretation of the words of a grant that it was the intent of the parties to create or reserve a right, in the nature of a servitude or easement, in the property granted, for the benefit of other land owned by the grantor, such right will be deemed appurtenant to the land of the grantor and binding.” Whitney v. Union Ry. Co., 11 Gray, *352 367; Hills v. .Miller, 3 Paige, 254. “ Cresswell, J., seems to regard it rather as a negative servitude upon the land adjacent to the tenement than an operative easement in favor of tenement itself.” Washburn on Real Prop., 4th ed., 649. On the general doctrine of the above cases, this court ordered a projection of the Burlington flats (in the same street) to be removed. Dubois v. Darling, 44 N. Y. Supr. Ct. 436. And a defendant was enjoined from maintaining a tenement house. Ammerman v. Dean, 57 N. Y. Supr. Ct. 175. This doctrine has been somewhat extensively referred to by us, not merely to illustrate the principles upon which it stands, but for the purpose of showing that these covenants are held sacred in equity and are enforced as a matter of strict justice.
Injunctions in this class of cases are granted almost as of course upon proof of a breach of the covenant. (3 Pom. Eg. Jurisp., p. 372, § 1342; Bispham Prin. of Eg., p. 414, § 461, and see Stewart v. Winters, 4 Sandf. Ch. 587.) The Alvords compelled all the other property owners to build on the line, and held them to the agreement,- and it is now claimed by their remote grantee, that although he had notice of the covenant, and' knew of the prior equity, he can disregard it, and build out to the line of the street, and exclude the adjoining owners from light, air and vision on the technical ground that Mrs. Alvord was incompetent to contract, and that her husband’s power of control terminated with his death in 1862, and hence whatever vitality the covenant ever had, ceased at that time. In other’words, that notwithstanding these facts, (1) that the covenant may have been valid in 1846 ; (2) that Mr. and Mrs. Alvord sold the property in 1857 with reference to it, and without repudiation ; (3) that the covenant had been fully executed by the erection of' buildings ‘in conformity to its terms over thirty years ago, yet, in consequence *353 of Mr. Alvord’s death in 1862, the covenant was spent and is now inoperative. No logical reasons have been advanced to support such an extraordinary claim, and our intention has not been called to any direct authority which sustains the proposition stated.
The defendant bought with knowledge of the covenant and took subject to it. (2 Pom. Eq. Jurisp., p. 14; Hodge v. Sloan, 107 N. Y. 245, 250; Trustees of Columbia College v. Lynch, 70 Ib. 450.) It was binding on the Alvords and is certainly valid as to him, a remote grantee charged with notice of the prior equity. (lb.) We are next called upon to consider the objection urged by the defendant, that ten feet of the front of the building is not affected by the covenant. This triangular piece was purchased by Susan Alvord, November 23, '1853, to straighten the line of her lot,. and the whole parcel was sold together as one lot, April 1, 1857, and it was built upon during that year, in conformity to the requirements of the covenant, and thus the entire structure is brought within its provisions, by the principles declared in Tallmadge v. The East River Bk., supra. The point, as to change of character of the neighborhood is equally without merit. Where the use of land is restricted to private residences and changes in the neighborhood unfit the property for that use, this circumstance may operate to defeat the covenant in that regard. Trustees of Columbia College v. Thatcher, 87 N. Y 311. The necessity presented for relaxing the rule in that case does not exist here. The covenant is of a different character, and falls within the principles decided in Lattimer v. Livermore, 6 Daly, 505, affd. 72 N. Y. 174, in which it was held that a covenant for the enjoyment of light, air and vision, was not discharged by a mere change of neighborhood, as there was no reason why an adjoining property owner by that circumstance should have less of either than his covenant called for.
*354 The plaintiff established her right to equitable relief by injunction, and it was error to vacate the temporary writ. The order appealed from must, therefore, be reversed and the application to continue the injunction granted, .with costs.
Freedman, J., concurred.