“ McAdam, J.
The parties derive title from the same common source and subject to a covenant which forbids the use of the property for any trade or business ‘ injurious or offensive to the neighboring inhabitants.’ The defendant ‘ The Taylor Co.,’ under a lease from the owner, the co-defendant Miller, uses the premises on the southeast corner of Madison avenue and Forty-third street, adjoining the plaintiff’s residence, as an undertaker’s establishment, for the sale of caskets and furnishing goods for funerals, also for embalming bodies, for autopsies and post-mortem examinations, the cutting and dissecting of dead bodies for the ascertainment of the cause of death, and for the reception and temporary deposit of human remains awaiting funeral rites and burial.The question to be decided is whether the business com *165 bination described is ‘ injurious ’ or ‘ offensive ’ within the meaning of the covenant. Anything that is hurtful, noxious, disturbs happiness, impairs rights or prevents the enjoyment of them, is injurious, and if it causes displeasure, gives pain or unpleasant sensations, it is offensive. The disturbing cause must be real, not fanciful, something more than mere delicacy or fastidiousness, but it need not necessarily be apparent to the senses of sight, smell or hearing, for it may be injurious without offending either. Thus, by the general principles of equity, the continuance of a powder or dynamite or firework establishment or a house of ill-fame will he enjoined at the suit of one who is deprived of the comfortable enjoyment of his property by the close proximity of such a nuisance. Hamilton v. Whitridge, 11 Md., 128. And it is no defence that there are other establishments to which similar objections he. Robinson v. Baugh, 31 Mich., 290. This upon the ground that tolerating one nuisance does not compel a party injured thereby to endure others. Nor does the failure to remonstrate against the erection of a nuisance create an estoppel against complaining of it afterward. Burt v. Smith, 3 Phila. R., 363. Every person is bound to make a reasonable use of his property so as to occasion no unnecessary damage or annoyance to his neighbor. Sic utere tuo, ut alienum non Icedas is the fundamental principle on which cases of nuisances are decided. A man (not restrained by covenant) has the right to use his house as he pleases, but he must not do it in such a manner as to render the houses of hiscneighbors unfit for the purposes for which they were intended. A use of property in one locality and under some circumstances may be lawful and reasonable, which under other circumstances would be unlawful, unreasonable and a nuisance. Campbell v. Seaman, 63 N. Y., 568. Nuisance, to an extent, is a question of locality and degree. In considering whether an act is a nuisance, regard must be had not *166 only to the thing done, but to the surrounding circumstances. What would be a nuisance in one neighborhood might not be so to another. Sturges v. Bridgman, L. R., 11 Ch., 852 ; Hurlbut v. McCone, 55 Conn., 31; Dennis v. Eckhardt, 3 Grant Cas., 390; McCaffrey’s Appeal, 105 Pa. St., 253; Dallas v. Art Club, 44 Leg. Int., 5l2. A lawful trade may be so offensive that it should be carried on only in an out-of-the-way place. 3 Bl. Com., 217.
a Blackstone defines a nuisance as being anything to the hurt or annoyance of another. By hurt or annoyance here is meant, not a physical injury necessarily, but an injury to the owner or possessor of premises as respects his dealings with or his mode of enjoying them. Wood says that a nuisance in the ordinary sense in which the word is used is anything that produces an annoyance; anything that disturbs one or that is offensive.
“ In legal phraseology the term is generally applied to that class of wrongs that arise from the unreasonable, unwarrantable or unlawful use by a person of his own property, working an obstruction of or an injury to the right of another, and producing such material annoyance, discomfort or hurt that the law will presume consequent damage. The plaintiff has a higher equity. She is not required to prove that the defendants are maintaining a nuisance.. She is seeking to enforce a covenant restricting the use of the adjoining property, and all she is required to prove is that the use complained of is repugnant to the covenant. While the theory upon which injunctions to restrain breaches of negative covenants are issued is that of presenting irreparable injury, yet the court will not enter into nice discriminations as to the extent of the damage. The mere fact that there has been a breach of covenant is a sufficient ground for interference. Bispham’s Eg., § 461. There is an observable distinction between natural and artificial causes *167 of injury—that is, those resulting in ordinary course from causes beyond human control and those created by voluntary choice or agency. Thus, if a person is taken sick and dies in his own house, he is entitled to appropriate attendance therein and burial therefrom, and no one will be heard to complain, for the consequences are natural, unavoidable and such as every neighbor must, in the nature of things, expect and submit too. This is a lawful thing. But where, as in this case, the occupant of a house advertises for and invites persons in all parts of the country to send dead bodies to his establishment to be temporarily stored, cut up, artistically coffined and furnished with elaborate funeral outfits, services, hearses and carriages, human agency acting on choice, makes a business of other people’s misfortunes, and parades death in the presence of the neighbors, to their pleasure or discomfort according to the view in which they regard such displays. Seymour v. McDonald, 4. Sandf. Ch. R., 503. This is objectionable and illegal. In times gone by dead bodies were arrested or attached for debt and held until the friends or relatives satisfied the creditor by discharging the obligation. 10 Gent. L. J., 325. Statutory provisions were found necessary both in England and here to stop the pernicious practice, and in section 314 of the Penal Code will be found this provision : e A person who arrests or attaches the dead body of a human being upon any debt or demand whatever or detains or claims to detain it for any debts or demand or upon any pretended lien or charge is guilty of a misdemeanor.’ The Penal Code (§ 305) provides that ‘ a person has the right to direct the manner in which his body shall be disposed of after death.’ He or his relatives may permit the body to be dissected ; and, except in a case in which a right to dissect it is given, every dead body of a human being must be decently buried within a reasonable time after death. Ib., § 306.
“ As to the right of relatives to control the burial of *168 the dead, see 10 Cent. L. J., 303; Johnston v. Marinus, 18 Abb. N. C., 72 and note. The tendency is to get dead bodies out of the way, and apart from kindred, none but students (who use them for dissecting purposes) and ghouls take any interest in their possession. The sick and dead have been a constant source of complaint, and many adjudications have been made in consequence. Thus, it has been held, that a hospital for the reception and treatment of patients with contagious diseases, established in a public place, is a public nuisance and indictable as such. Rex v. Vantadillo, 4 M. & S., 73; Walcott v. Mellick, 3 Stockt. N. J., 309. The maintenance of a hospital for the care of sick infants, including any who may develop, after admission, contagious disease, was held to be a violation of the ordinary covenant against nuisances. Gilford v. Babies’ Hospital, 21 Abb. N. C., 159.
“ An injunction will be issued to restrain the burial of the dead in a cemetery near one’s premises when it appears that the interments there will endanger health by corrupting the air or contaminating the water of wells or springs. Clark v. Lawrence, 6 Jones Eq., N. C., 83. So, too, the maintenance of a private tomb upon one’s own land near the residence of another, when it is established that by reason of the effluvia arising from the bodies kept there renders the air unwholesome and impairs the market value of the property is held to be a nuisance. Barnes v. Hathon, 54 Me., 224. These cases are cited merely to show to what extent the courts have gone in protecting neighborhoods from what were regarded as objectionable features. Any family of ordinary sensitiveness would at once pronounce the combination of purposes to which the defendant’s establishment is put as shocking to the finer feelings, irritating, causing unpleasant sensations, and destroying the happiness of life and the comforts of home. The plaintiff owns her house and cannot readily leave it. While required to *169 remain she is daily compelled to witness the arrival and removal of bodies in wagons and hearses, followed by the sorrowing friends and relatives of the departed. Such an establishment—no matter how well-conducted —is a source of injury to adjoining property, tending to depreciate its selling and rental value, and is to the fullest extent 6 injurious,’ as well as 6 offensive to neighboring inhabitants ’ within the meaning of that term as used in the covenant. No change in the neighborhood relieves from the effect of the covenant sought to be enforced. Within the rule declared in the case of the Columbia College v. Thacher, 87 N. Y., 311, a change of neighborhood from private dwellings to store property may so far relieve from the covenant as to accommodate the change caused by circumstances, i. e., to permit private dwellings to be occupied as stores, but so much of the covenant as enjoins noxious occupations remains in force to protect the neighborhood in its new condition for business from the evils especially inhibited, if the covenant can be as well applied after as before. Municipalities, deferring to public sentiment, have prohibited the interment of the dead within their corporate limits, and have been sustained by the courts. Brick P. Church v. Mayor, 5 Cow., 538 ; Coates v. Same, 7 Ib., 585; Kincaid’s Appeal, 66 Pa. St. R., 423; S. C., 5 Am. R., 377; City Council v. Wentworth, 4 Strobh. R., 310 ; Lake View v. Rose Hill Cemetery, 70 Ill., 192. The burial of the dead within the limits of towns and cities,’ says Tiedeman in his work on Limitations of Police Power, § 122d, Nias always been and still is a common evil.’ These dicta show that the prevailing tendency is to prevent, as far as possible, the collection of dead bodies in cities, by excluding them therefrom as a protection of inhabitants from any dangers which might be engendered. Death in any form is an unwelcome visitor, and the great majority of people shun places where bodies are awaiting interment. Such places are *170 far from being attractive except to those morbidly curious. While every advance in science is hailed with delight, popular opinion has not yet reached the belief that the general good requires that private corporations or individuals shall for gain or from motives of philanthropy open dead houses in fashionable or thickly populated parts of the city where autopsies and post-mortems are held, or where dead bodies are cut up and stored, or where funerals are furnished without regard to number, whenever required. Cremation in the city would be as readily tolerated. All of these things are good in their place, but offensive everywhere else.
“ Dead houses, morgues, dissecting-rooms and establishments for autopsies and post-mortems, or for the reception of dead bodies, have no place in a city like New York, and, if tolerated, should for sanitary and other reasons be permitted only along the river fronts or in some out-of-the-way place, so far removed from in-habitations as not to offend the amenities of life and to be absolutely free from all harmful influences. Where a covenant exists, as in this case, it is the duty of the court to enforce it according to its letter and spirit. Bradley v. Walker, 14 N. Y. Supplt., 315. The chapel in the rear of the building is not a church, within the proper meaning of that term. It has no pastor, no religious principles and no services, except as a mere incident to the funeral business carried on. If a funeral is held, a clergyman or substitute is employed to suit the views of the friends of the deceased. Churches, properly so-called, are dedicated to the worship of God according to some prescribed form of religion, and funerals are but a mere incident of their work. In the present case the i chapel ’ is merely part of the business, and it matters not who occupies the pulpit or what his views are as to a future state or whether he has any religious belief, so long as he suits his employers and earns his reward.
*171 “ It follows that the plaintiff is entitled to judgment with a perpetual injunction restraining the continuance of the acts complained of, with costs and $300 allowance. Settle decree on notice.”
"McAdam, J.
The combination of purposes to which the defendant’s premises were put was held to be a violation of the plaintiff’s rights under the covenant running with and affecting the land, and the decree in consequence enjoined such use as illegal. It was not intended to prohibit the carrying on of any lawful business not inhibited by the covenant, and the sixth paragraph was purposely inserted to exclude the implication that any such purpose was intended. Courts in enforcing obligations must take care not to infringe rights. The Taylor Co. has complied with the provisions of the decree, has evinced a willingness to accord the plaintiff her full rights and asks to have the injunction modified so that in protecting her, it may not unnecessarily injure it. The injunction will therefore be modified in the manner and to the extent indicated in the proposed order on payment within two days of $454.87, the taxable costs included in the judgment. If the injunction in the modified form is abused, such abuse may (be) restrained or punished on application. This would be implied if not expressed. The fact that Miller, the lessor, has appealed, does not make the application by the lessees irregular or inconsistent. The lease is for a term of years and by it the lessees have rights and obligations different from those of the owner. Whether the particular estate of the owner can suffer any appreciable damage by the injunction directed against a particular use of the property by the lessees is a question that may be more appropriately discussed when his appeal is heard. His grievance will then be considered and the fact that he has appealed should not prejudice the lessees whose business interests distinct from the *172 owner may require them to make any reasonable use of the property (not repugnant to the plaintiff’s rights) in order to pay their rent and preserve their estate. Submit order.”
Burrill, Zabriskie & Burrill, attorneys, and George Zabriskie of counsel, for appellant.
Lockwood & Hill, attorneys, and John L. Hill of counsel, for respondent.
Per Curiam.
Judgment affirmed, with costs, on opinion delivered at special term.