[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff brings this action for a permanent injunction and damages against October Twenty-Four, Inc. (Corporation) a Connecticut corporation[1], and A. Aiudi and Sons (Partnership).
Facts CT Page 21
The parties have stipulated to the following facts which the court finds:
"1. October Twenty-Four, Inc. is a Connecticut corporation and is presently in good standing. lot #20-A-14 located on Loon Lake Road in Plainville, Connecticut.
3. On January 10, 1978 and at all times since to the date hereof, said lot 20-A-14 was wholly situated in a R-40 residential zone.
4. Lot #20-A-14 is northerly of and abuts the property of Tomasso Brothers, Inc. which is also located on Loon Lake Road a/k/a North Mountain Road.
5. The plaintiff, Tomasso Brothers, Inc., acquired title to a piece or parcel of land referred to in the Plaintiff's Complaint for $33,000.00 by a Warranty Deed from Tilcon Minerals, Inc. dated August 26, 1988 and recorded in the Plainville Land Records on September 27, 1988 in Volume 261 at. CT Page 763
6. Tomasso Brothers, Inc. abutting property is located in a Technology Park zone, which had been changed from a quarry zone in 1985.
7. The uses presently permitted in R-40 zones have not changed since January 10, 1978.
8. October Twenty-Four, Inc. allows the excavation of trap rock from said lot 20-A-14.
9. October Twenty-Four, Inc. allows drilling, blasting and the loading of trap rock at said lot 20-A-14.
10. October Twenty-Four, Inc. allowed the removal of approximately 180,000 tons of trap rock from said lot 20-A-14 in calendar year 1989.
11. Blasting at said lot #20-A-14 occurs approximately every two weeks except during the winter shut down.
12. Lot #20-A-14 is shown as "Aiudi Trap Rock Quarry" on a map entitled "Bedrock Mines and Quarries of Connecticut, compiled by Robert J. Altamura, 1987, Connecticut Geological and Natural History Survey, National Resources Center, Department of Environmental Protection, Hugo F. Thomas, State Geologist, Scale 1:125,000, 1 inch equals approximately 2 miles." CT Page 22
13. October Twenty-Four, Inc. obtained a wetlands permit from the Inland Wetlands Commission of the Town off plainville on January 4, 1978.
14. The following documents, maps, minutes, regulations and reports are authentic of true copies of the originals and may be introduced in evidence without further authentication:
 A. Memo to Merwin Schaefer from Robert R. Jahn dated February 27, 1989.
 B. Town of Plainville Zoning Maps Revised to July 1, 1976; revised to January 1978; Revised to February 1983; Revised to February 1, 1986; Revised to February 1, 1987; Revised to February 1, 1990.
 C. Excerpts of Plainville Zoning Regulations effective July 1, 1976; excerpts effective May 15, 1981 and June 15, 1981; excerpts effective February 17, 1986; excerpts effective July 8, 1986; excerpts effective June 12, 1987.
 D. Current Plainville Zoning Regulations in their entirety.
 E. Inlands Wetlands Commission minutes of Meeting January 4, 1978.
 F. Plainville Planning Zoning Commission Minutes of January 10, 1978.
 G. Plainville Planning Zoning Commission Minutes of January 22, 1980.
 H. Plainville Planning Zoning Commission Minutes of March 24, 1981.
 I. Plainville Planning Zoning Commission Minutes of January 12, 1982.
 J. Plainville Planning Zoning Commission Minutes of February 9, 1982.
 K. Plainville Planning Zoning Commission Minutes of November 8, 1983.
 L. Plainville Planning Zoning Commission Minutes of November 22, 1983
CT Page 23 M. Plainville Planning Zoning Commission Minutes of November 10, 1987.
 N. Plainville Planning Zoning Commission Minutes of January 10, 1989.
 O. Plainville Planning Zoning Commission Minutes of January 24, 1989.
 P. Plainville Planning Zoning Commission Minutes of February 14, 1989.
 Q. Plainville Planning Zoning Commission Minutes of February 28, 1989.
 R. Plainville Planning Zoning Commission Minutes of March 14, 1989.
 S. Plainville Planning Zoning Commission Minutes of March 28, 1989.
S-1 Plainville Planning Zoning Minutes of May 11, 1982.
S-2 Plainville Planning Zoning Minutes of June 8, 1982.
S-3 Plainville Planning Zoning Minutes of June 22, 1982.
 T. Plainville Planning Zoning Commission Minutes of April 11, 1989.
 U. Plainville Planning Zoning Commission Minutes of April 25, 1989.
 V. Plainville Planning Zoning Commission Minutes of May 23, 1989.
 W. Plainville Planning Zoning Commission Minutes of April 24, 1990.
 X. i. Site grading plan — Loon Lake Road, dated November 1977 as filed in Plainville Town Clerk's Office on January 30, 1978.
 ii. Site Grading Plan — Revised January 18, 1980, Revised March 20, 1981, Revised December 12, 1981.
iii. Site Grading Plan — Revised August 8, 1983.
iv. Site Grading Plan — Revised June 16, 1987, CT Page 24 Revised December 21, 1988.
v. Site Grading Plan — Revised April 9, 1990.
 Y. Map of Bedrock Mines and Quarries of Connecticut listed in paragraph 14 above.
18. October Twenty-Four, Inc.'s "site grading plan" have [sic] been presented to the Planning Zoning Commission pursuant to or under the provisions of Article 6, Section 600 lD-1 of the Plainville Zoning Regulations."
In addition, the court finds the following:
Plaintiff in August 1988 bought a 28-acre piece of real property in Plainville on the easterly side of North Mountain Road, (a/k/a Loon Lake Road). The Corporation since at least 1978 has owned a 38-acre piece located next north of plaintiff's on that road. Partnership is and has been engaged in rock excavation from the Corporation's property for some 12 years and expects to continue that excavation for another 8 to 10 years. That operation is quarrying and the defendant's property contains a large quarry.
Plaintiff's property is in the Technology Park Zone of Plainville and the Corporation is in the single family residence R-40. Quarrying is not permitted in that R-40 zone nor has it been a permitted use since at least July 1, 1976.
The court has viewed both properties and has seen the excavation work in operation. There is blasting conducted by defendants on its property but the court did not hear it.
The highest and best use of plaintiff's property is for development of an office park with a modest hotel[2].
Plaintiff has prepared tentative plans for such a use and intends to proceed with development of the site. Such plans are economically feasible even in the present economic condition of the "Hartford area" real estate market because the site is well-located and suitable to take advantage of several trends in the regional development market.
Defendant's quarrying operation can be heard on the site of the proposed hotel and the noise is in excess of the ambient noise level. It can also be felt on the site. The court cannot find that plaintiff has sustained its burden of proof in regard to problems of dust or the possibility of rock lying from defendant's to plaintiff's property. The defendants blasting, quarrying and trucking operation can be seen from the CT Page 25 proposed hotel site. Defendant's quarrying operation would
have a serious detrimental affect on plaintiff's intended use. Potential lenders and equity participants would be reluctant, at best, to lend for or invest in development of such a use while the defendant's quarry is or could be in operation.
The parties generally agree and the court finds that the site is in the Greater Hartford area for consideration of its development potential but it is the four communities of New Britain, Plainville, Berlin and Southington that are the primary target for the development. It is also close to the juncture of two major limited access highways. The hotel and its parking are in New Britain while most of the office park part and its parking are in Plainville with one proposed office building in New Britain.
Some of plaintiff's area is not "buildable". The only "buildable area" in the northwest portion of the site is where the hotel is to be built. This is separated from the "buildable area" where the offices are to be by a wooded area and wetlands.
There is a non-operating quarry in the area to the west of plaintiff's property and across Loon Lake Road. If it were in operation or it appeared it would be in operation the plaintiff's proposed development would not be financed. It is clearly not in operations and has not been for thirteen years. The court finds that it is clear it will not be in operation again as a quarry.
The face of defendant's quarry is about 1250 feet from the location of the proposed hotel.
The noise generated by defendant's quarry operation is such it would be heard inside the hotel building proposed for plaintiff's property.
The noise defendant generates is at least 30 dba over the ambient noise. Any increase of 5 dba over the ambient noise will produce complaints from those subjected to that excess noise.
The ground vibrations caused by the defendants blasting would not be great. They would rattle the ordinary window in the hotel.
The quarry operation generates loud noise from rock drilling, blasting, payloaders dumping blasted rocks into metal truck bodies, compressors, truck back-up alarms, diesel pumps, CT Page 26 loud engines and trucks riding over bumpy roads.
The defendant's quarry has sufficient trap rock left to permit operation for another ten (10) years. In 1989 defendants removed about 180,000 tons of rock generating about 18,000 truck trips on North Mountain Road past plaintiff's property.
Plaintiff's Case
Defendants are operating a quarry and that operation is a nuisance.
Plaintiff has been irreparably harmed and has no adequate remedy at law.
The court must balance the equities before it may grant an injunction and it must also balance the degrees of harm to the parties as to each part of any order entered. A good example of an order that was carefully trimmed to fit the body of the harm is found in what our supreme court did in Herbert V. Smyth, 155 Conn. 78, 85-86. In the process of balancing the equities between[3] the parties the court has viewed the defendant Corporation as having a legal right to develop its site as far as the municipality is concerned. This may turn out to be incorrect, in which case Corporation's position would be much weaker. This court takes no position as to the legal validity of the defendant's claim of right under the rulings of the municipality. cf. O'Neill v. Carolina Freight Carriers Corporation 156 Conn. 613 (supreme court sustained an injunction against a trucking company to
partially prevent it from operating in a fashion which the municipal regulations condoned). There can be no doubt that a use which does not violate zoning restrictions may nevertheless create a common-law nuisance. Herbert v. Smyth 155 Conn. 78, 83.
Of course, this court's order cannot and does not interfere with the powers or actions of the municipality. Fellowes v. City of New Haven, 44 Conn. 240, 258 and Donnelly Brick Co., Inc. v. New Britain, 106 Conn. 167, 173-176.
In balancing the harms and equities the court considers the situation as it exists now. Holt v. Wissinger, 145 Conn. 106,115. This does not mean that present plans for future action are ignored. The court recognizes (1) that defendant while not blasting and working on any given day reasonably expects to blast and work in the future and (2) that plaintiff has present plans to build in the future. CT Page 27
Neither this plaintiff nor any responsible real estate developer can be expected to spend a large sum of money on preliminary development costs if it is unsure that development will be financially successful. A development such as this requires that the developer "prime the pump" by getting necessary approvals and building the "basic infrastructure" before beginning serious marketing. The development cannot be expected to be successful if the quarry remains in operation. The probability of lender or equity participation is now nil as a consequence of defendant's ongoing operation. Plaintiff is now injured. Therefore, in order to give plaintiff an opportunity to begin the development of its property there must be an existing permanent injunction against this defendant to assure plaintiff and its probable, and hoped-for lenders, lessees, buyers, and partners that the present nuisance will not exist when development starts.
An injunction was granted in the case of Brainard v. West Hartford, 140 Conn. 631, 633 in a situation in which plaintiffs were making no present use of their land. In that action the trial court made a finding that the use threatened by defendant had caused a loss in value to plaintiffs raw land. Id. 634. The present case is much stronger than that case.
Defendant's Case
A. Exhaustion
This defense is asserted in the first, fourth and fifth special defenses. Plaintiff was not required to exhaust any administrative remedies before seeking the injunction. Cummings v. Tripp, 204 Conn. 67, 79; Fitzgerald and Merard Holding Co.,106 Conn. 475, 482-484.
B. Statute of Limitations
Plaintiff only became the owner of the property August 26, 1988 and suit was begun June 27, 1989. The statute C.G.S.52-577 has not run. (And see E. infra)
C. Unclean Hands
The defendant has failed to prove the factual allegations of its Third Special Defense.
D. Equitable Estoppel
In order to prevail on their claims of estoppel each defendant must prove that some misleading conduct of plaintiff was relied on by that defendant to its detriment. Hurt. v. CT Page 28 Friedman Co., Conn. App. 720, 722. Neither defendant has sustained its burden of proof in this regard. In addition the defendants have failed to prove the factual allegations of the Fourth Special Defense.
E. Laches
Laches consists of three elements. First, there must be proof of a delay. Second, there must be proof that the delay was inexcusable. And finally, there must be proof that the delay prejudiced the party complaining of it. Bianco v. Darien, 157 Conn. 548, 556. The defendants have not sustained their burden of proof in this regard.
F. Waiver
Waiver is the intentional relinquishment of a known right. Flaxman v. Capitol City Press, Inc., 121 Conn. 423,430. Plaintiff never waived its right to the relief sought as to either defendant.
G. Tacking
The defendants seem to pursue a theory that because their operation existed since 1978 and was known to their plaintiff's predecessor in title that the plaintiff itself is charged with that knowledge for purposes of the special defenses. This is a novel claim to this court. It is reminiscent of the theory of "tacking" used in adverse possession cases. Smith v. Chapin, 31 Conn. 530, 531, Marquis v. Drost, 155 Conn. 327, 331. However, the court cannot find any proof of knowledge by plaintiffs of the defendant's operation by tacking, either infused or direct which would aid defendants.
H. First in Time
The defendant argues that because it was operating its quarry before plaintiff ever owned the property it may continue to operate in the same way. Although only dicta the court in Hurlbut v. McKane, 55 Conn. 31 stated clearly that even if a "plaintiff knew of the nuisance, and then went and took up his abode near it, he would not thereby be precluded from maintaining his action" Id. 43-44.
Defendants claim their business is lawful. If that is so the "fair test of whether a business lawful in itself constitutes a nuisance is the reasonableness of the use of the property in the particular locality under the circumstances of the case" Wetstone v. Canton, 144 Conn. 77, 80. Thus the court CT Page 29 must first determine if defendants' operation of blasting and rock removal is lawful. It is not under the zoning regulations of the Town of Plainville. 500, 501, 505.
Even if the defendant's operation were lawful the court must determine if defendants' use of their real property was reasonable. To do that we view not only the defendants' rights but the rights of others, including the plaintiff Hurlbut v. McKone, 55 Conn. 31, 41-42. The use is unreasonable.
Orders
I. Quarrying Activity
The defendants shall cease all quarrying activity including but not limited to all blasting and rock removal from Corporation's property within ten (10) days after the plaintiff's plan of development for a technology park development is approved by the appropriate authority or authorities of the Town of Plainville. This order is not applicable to any development plan approved for only industrial of light industrial development. This order shall not be stayed from the date of such municipal approval for any reason including any possible appeals from such municipal authorization, whether successful or not.
II. Restoration
This court issues no order of restoration as it leaves that to the power of the municipality.
III. Damages
The plaintiff's claim is not that defendant's use of their quarry has resulted in a permanent taking of an interest in its land. Plaintiff "is entitled to recover only for the temporary interference with [its] use and enjoyment of [its] property prior to the bringing of this action" Nailor v. Blakeslee Sons, Inc., 117 Conn. 241, 246.
The court has received a vast amount of evidence in regard to damages but cannot find without speculation[4] that plaintiff has sustained its burden of proof and therefore awards nominal damages of $1.00.
N. O'NEILL, J.