B. F. MILLER, Appellant, v. THE CITY OF WEBSTER CITY.

**Power of City.** It cannot be urged against the establishment of a
1  market place, by the council, under Code, 456, that there was no necessity for it or that it was not expedient.

**Nuisance.** A market established by a city under Code, 456, is not ren-
3  dered a nuisance *per se* because stock confined in it corrupts the air.

SAME: THE MAINTENANCE OF HITCHING POSTS impliedly authorized
4  by the power authorizing the establishment of a market place, cannot be enjoined because horses hitched to them deposit excrement in the street.

**Practice.** In an action to enjoin a nuisance, created by ordinance, it
2  is irrelevant that the ordinance is unreasonable.

*Appeal from Hamilton District Court.*—HON. J. L. STEVENS, Judge.

THURSDAY, APRIL 4, 1895.

Suit in equity to enjoin a nuisance alleged to have been created by defendant in establishing a place called "Market Square" within the city, whereat hogs, cattle, grain and produce were kept and sold, and for other relief. ' Defendant was enjoined from using the place unless it removed the excrement deposited by the live stock daily, and otherwise the relief prayed for was denied. Plaintiff appeals.—*Affirmed.*

*Hyatt & Hyatt* and *Wesley Martin* for appellant.

*George Wambach* and *D. C. Chase* for appellee.

Deemer, J.—Plaintiff is the owner of lots 1 and 2 in block 73 in the defendant city, which he has occupied, improved, and used as a residence property since the year 1882. Block 72 lies directly south of, and in front of, plaintiff's residence, and at the time plaintiff purchased his property it was vacant. In the year 1889 the defendant purchased block 72, and established it as a market place, locating the city scales thereon. The plaintiff charges that the city, since its purchase, has erected stock yards or small inclosures thereon, in which are kept large numbers of hogs and cattle, and that it allows the excrement and other filth to accumulate and decay thereat; that said grounds are flat, and wholly without drainage, and that by reason of the use of the property and its situation, noisome and offensive smells emanate therefrom, which corrupt and infect the air in and about plaintiff's house, threatening the health of his family, and seriously interfering with the comfortable enjoyment of his property, rendering the same worthless and dangerous to use during the greater portion of the year; that the erection and maintenance of the yards are wholly unnecessary for the public good or convenience; and that other and more suitable grounds can be obtained without expense, elsewhere. Plaintiff further charges that in the year 1889 the defendant erected, and still maintains a row of hitching posts on the north side of block 72, and directly in front of plaintiff's house, where large numbers of teams are allowed to stand daily and deposit excrement, which is allowed to accumulate and remain upon the street, creating foul and unhealthy odors, greatly injuring and interfering with plaintiff's enjoyment of his property. An injunction is asked against the further maintenance of the stock yards and the

hitching posts. The defendant claims to have established a market place and located the city scales on block 72 under and by virtue of an ordinance regularly passed by its city council, and alleges that the same was done with the knowledge and acquiescence of the plaintiff. It further says that live stock is brought upon the property for weighing and selling purposes only, and allowed to remain but for a reasonable length of time for these purposes; that the premises are at all times kept free and clean from anything offensive to the senses, or injurious to the health of the public, or those who reside in the immediate vicinity. It avers that it has erected the hitching posts complained of to meet a public demand, and that these posts in no manner interfere with public travel, or with plaintiff's free access to and from his lots, or with the free use of his lots. It further claims that the use of the hitching posts is necessary to the conduct of the market place, and that it does not permit their use for unlawful purposes. The district court enjoined the use of the yards without daily cleaning by removing the excrement deposited by animals there confined, and denied plaintiff all other relief, and plaintiff appeals.

I. It is contended on behalf of appellant that there is no necessity for a market place, with scales and yards, where it now exists; that there were ample facilities for weighing and handling stock and other property brought to the city for market, before the establishment of the market place; and that there were other places much more convenient, where it might have been located. It is provided by statute (Code, section 456) that cities and towns "shall have power * * * to establish and regulate markets; to provide for the measuring or weighing of hay, coal, or any other article of sale." Pursuant to this power, the city, through its council, established a market place upon

the property in question, and located the city scales thereat; appointed a weighmaster; and required all persons having any commodity to buy or sell by weight, where the quantity exceeded six hundred pounds, to weigh upon the city scales. As the statute expressly confers upon the city the authority to establish markets and to provide for the weighing of commodities, and contains no limitations upon the powers granted, the time, manner, and expediency of its exercise are left to the discretion of the corporation; and the judgment of its officers upon such matters cannot be controlled by the courts, so long as they act within the scope of their authority. The discretion of a municipal corporation, within the sphere of its powers, is as wide as that possessed by the government of the state, subject, however, to the general rule that the ordinances must be reasonable. The action of the city council in the exercise of expressly delegated powers cannot be questioned upon the ground that it is in conflict with public interests. *Town of Cherokee v. Town Lot & Land Co.*, 52 Iowa, 279; *Bankhead v. Brown*, 25 Iowa, 540. It is quite clear that we cannot enter upon the field of inquiry suggested by counsel.

II. It is claimed that the ordinance is unreasonable in that it requires the entire weighing of the city to be done on one set of scales. Just how this would make the market yards a nuisance, even if the proposition contended for be conceded, it is difficult to imagine. We do not think it necessary to enter upon a discussion of the question here mooted.

III. Appellant further insists that the evidence conclusively establishes that the place is a nuisance,

and should be abated as prayed. The lower court found that at plaintiff's house the stench at times is very annoying, and is in part due to the unclean condition of the yards; that at times several loads of manure have been permitted to accumulate; and that daily cleaning of the yards would in his opinion, prevent any possible injury to the health of those residing in that locality. He also further found that neither the market place nor the hitching posts were, *per se,* a nuisance. With these findings we are quite content. The market place is expressly authorized by statute and by ordinance of the city council; and the hitching posts are impliedly authorized for the accommodation of those attending the market or who may wish to use the city scales. Being so authorized, they are not public nuisances; for the rule, as we understand it, is that where a municipal corporation is authorized to do a particular thing, so long as it keeps within the scope of the power granted, it is protected from proceedings on behalf of the public, subject possibly to this qualification that the nuisance, if any, arises as a natural and probable result of the act authorized, so that it may fairly be said to be covered, in legal contemplation, by the legislation conferring the power. If the nuisance is not the necessary result of the act authorized, or if it might be exercised in such a manner as to obviate the nuisance, legislative authority will not be inferred from the grant, to create the nuisance, and it will not bar proceedings to abate it. As the market is expressly authorized, and as the evidence shows that it was located in the business part of the city at the intersection of two of the principal business streets, and at a place well adapted for the purposes for which it was intended, it was not, *per se,* a public nuisance. It became such solely by reason of its use, and it seems to us that it can be so conducted that it will

not injuriously affect the plaintiff, except consequentially. The use of the streets for hitching posts did not in any manner interfere with plaintiff's use of his property. They were located on the side of the street adjoining the market place, and are not complained of as such. The deposit of excrement at this place is a direct and necessary incident of a lawful use of the posts, and is a matter of which plaintiff cannot complain in this suit.

IV.   While it is practically conceded that legislative grant is a bar to public prosecution for the maintenance of a nuisance, yet it is contended that such a grant is no defense to a private action for damages suffered by an individual, distinct and separate from that suffered by the general public.   The argument proceeds upon the theory that, while the legislature may authorize the establishment of any kind of business in which the general public has an interest, yet it cannot, in so doing, authorize the taking of private property for public use without making compensation.   The question presented is an interesting one, but we do not find it necessary to determine it.   From time immemorial, the creation and maintenance of public markets has been deemed an incident of sovereignty, and the benefits derived therefrom by the public have ever been recognized.   The people of this state have seen fit to delegate the power of establishing them to various municipalities, and the defendant, in the exercise of this delegated power, established a market at the place in question, in virtue of the discretion lodged in its officials.   Now, if it be conceded that the establishment of the market at the place in question created a nuisance, and is such an injury to plaintiff as that it amounts to a taking of his property, it does not follow that he is entitled to an injunction restraining the further maintenance of the same.   It is a general rule in equity that, where the

damages can be admeasured and compensated, equity will not interfere, where the public benefit outweighs private and individual convenience. As said in *Daniels v. Waterworks*, 61 Iowa, 549: "The right of every person to pure air must be conceded, but, where persons choose to reside in cities and towns, * * * their inconvenience and annoyance must yield to the public good, in so far as the interposition of a court of equity is concerned." If it were within the power of the individual who suffers consequential injuries by reason of the establishment of works of public improvement or convenience to enjoin and abate the same, municipal improvement would stop, and the hand of the state would be paralyzed. While the sovereign power cannot take away absolutely the private right of individuals, by the legislative creation of nuisances, yet one is expected to submit to a reasonable amount of discomfort, for the general public good. It is clear that plaintiff is not entitled to any greater relief in equity than the court gave him. We are not to be understood as intimating that he can maintain an action at law for the damages he claims he has sustained. The question is not free from difficulty, and we do not care to indicate our views upon it until it is properly presented. It may be well to remark that the case is quite different from *Foote v. Water Co.*, 94 Iowa, 200, 62 N. W. Rep. 648, and *Churchill v. Water Co.*, Id., 646, decided at the present term. The decree of the district court is *affirmed*.