JESSE LOWE ET AL., APPELLEES, V. PROSPECT HILL
CEMETERY ASSOCIATION, APPELLANT, ET AL.

FILED FEBRUARY 23, 1899.   No. 8654.

1. **Nuisances:** CEMETERIES: EVIDENCE. The evidence set out in the
opinion and *held* to sustain the finding of the district court that
the proposed use by appellant of its grounds for interring therein
dead bodies would probably result in contaminating the waters
of appellees' wells with disease germs, and thus endanger the
health and lives of appellees and their families.

2. ———: INJUNCTION. A use made by one of his property which
works an irreparable injury to the property of his neighbor, or
whereby the unwritten but accepted law of decency is violated,
or which deprives his neighbor of the reasonable and comforta-
ble use of his property, or which will probably endanger the
health and life of his neighbor, is a private nuisance and may
be enjoined.

3. ———: ———: EVIDENCE. In such a case, to authorize the injunc-
tion, it must be established by satisfactory evidence that the
injury threatened or apprehended will probably result.

4. ———: ———. A court of equity has jurisdiction to enjoin a
threatened injury whenever its nature is such that it cannot
be adequately compensated in damages and its continuance
would occasion a constantly recurring grievance.

5. ———: ———: ABSENCE OF LEGAL REMEDY. *Held*, Under the es-
tablished facts, that appellees were without an adequate remedy
at law for the redress of the apprehended injuries of which they
complained.

6. **Right of Private Property.** Neither courts nor legislatures, ex-
cept on the demand of the state and for its use, can compel one
citizen to sell his property even for its full value to his neighbor
for the latter's private use.

7. ———: EASEMENTS. The citizen is entitled to the use and enjoy-
ment of the light and the air over, and the water beneath, the
surface of his premises, and in order that his neighbor may de-
vote his property to a particular use cannot be compelled to
surrender those rights even if fully paid therefor.

8. **Nuisances:** INJUNCTION. The object of an action to enjoin a pri-
vate nuisance is to prevent the defendant from using his prop-
erty in such a manner as will disturb the plaintiff in the rea-
sonable use and occupation of his property.

9. ——: ——. A tenant for life or years rightfully in possession of real estate may maintain such an action.

10. Confession and Avoidance: PLEADING. A defense in the nature of a confession and avoidance, to be available, must be pleaded.

APPEAL from the district court of Douglas county. Heard below before POWELL, J. *Affirmed.*

*E. Wakeley,* for appellant:

If it be doubtful or contingent whether acts will constitute a nuisance, injunction will not be granted until actual demonstration. (*McCord v. Iker,* 12 O. 387; *Upjohn v. Board of Health,* 46 Mich. 542; *Rhodes v. Dunbar,* 57 Pa. St. 274; *City of Greencastle v. Hazelett,* 23 Ind. 186; *Porter v. Witham,* 17 Me. 292; *Adams v. Michael,* 38 Md. 123; *Butler v. Rogers,* 9 N. J. Eq. 487; *Rogers v. Danforth,* 9 N. J. Eq. 289; *Kingsbury v. Flower,* 65 Ala. 479; *Dunn v. City of Austin,* 77 Tex. 139; *St. James Church v. Arrington,* 36 Ala. 546; *Ellison v. Commissioners,* 5 Jones Eq. [N. Car.] 57; *Barnes v. Calhoun,* 2 Ired. Eq. [N. Car.] 199; *Dorsey v. Allen,* 85 N. Car. 358; *Laughlin v. President,* 6 Ind. 223.)

Injunction is discretionary. (*Pettibone v. La Crosse & M. R. Co.,* 14 Wis. 443; *Cobb v. Smith,* 16 Wis. 692; *Hine v. Stephens,* 33 Conn. 497; *Wilder v. Strickland,* 2 Jones Eq. [N. Car.] 386; *Jones v. City of Newark,* 11 N. J. 452; *Torry v. Camden & A. R. Co.,* 18 N. J. Eq. 293.)

There is an ample remedy at law. (*Wing v. Fairhaven,* 8 Cush. [Mass.] 363; *Blain v. Brady,* 64 Md. 373; *Dana v. Valentine,* 5 Met. [Mass.] 8.)

Defendant cannot be denied the lawful use of its property. (*Stoughton v. State,* 5 Wis. 291; *Chope v. Detroit & H. P. R. Co.,* 37 Mich. 195; *Danville, H. & W. R. Co. v. Commonwealth,* 73 Pa. St. 29; *Hinchman v. Patterson Horse R. Co.,* 17 N. J. Eq. 75; *Attorney General v. New York & L. B. R. Co.,* 24 N. J. Eq. 49.)

Anything authorized by law is not a nuisance.

Courts will not create a nuisance. (*Cleveland v. Gas Light Co.,* 20 N. J. Eq. 201; *Musgrove v. Catholic Church,* 10 La. Ann. 431; *Minke v. Hopeman,* 87 Ill. 450; *Attorney*

*General v. Colney Hatch Lunatic Asylum*, 4 Ch. App. [Eng.] 147; *Earl of Ripon v. Hobart*, 3 Myl. & K. [Eng.] 169; *Rouse v. Martin*, 75 Ala. 510; *Cook v. Benson*, 62 Ia. 170.)

*C. A. Baldwin*, also for appellant.

References: *Attorney General v. Forbes*, 2 M. & C. [Eng.] 123; *Frewin v. Lewis*, 4 M. & C. [Eng.] 249; *Town of Lakeview v. Rose Hill Cemetery*, 70 Ill. 191; *People v. Gadway*, 61 Mich. 286; *In re Hauck*, 70 Mich. 407; *Richard's Appeal*, 57 Pa. St. 105; *Page v. Symonds*, 63 N. H. 17; *City of Austin v. Austin Cemetery Co.*, 28 S. W. Rep. [Tex.] 528; *Village of Waupun v. Moore*, 34 Wis. 450; *Schuster v. Board of Health*, 49 Barb. [N. Y.] 450; *Attorney General v. Fagan*, 22 La. Ann. 545; *Taunton v. Taylor*, 116 Mass. 254; *Powell v. Foster*, 59 Ga. 790; *Thebaut v. Canova*, 11 Fla. 143, 154; *Laughlin v. Lamasco City*, 6 Ind. 223; *Morris Canal & Banking Co. v. Central R. Co.*, 16 N. J. Eq. 419; *Turnpike Co. v. Yuba*, 13 Cal. 190; *Wilder v. Strickland*, 2 Jones Eq. [N. Car.] 386; *Mayor of Newark v. Watson*, 29 Atl. Rep. [N. J.] 487; *Hoboken Land Co. v. City of Hoboken*, 7 N. J. Law 540; *Village of Mankato v. Willard*, 13 Minn. 1; *Trustees of Methodist Church v. City of Hoboken*, 33 N. J. Law 13; *Vick v. Vicksburg*, 1 How. [Miss.] 379; *Harding v. Jasper*, 14 Cal. 643; *Rector v. Hartt*, 8 Mo. 448; *Warren v. Jacksonville*, 15 Ill. 236; *Abbott v. Mills*, 3 Vt. 521; *Heirs of David v. City of New Orleans*, 16 La. Ann. 404; *Godfrey v. City of Alton*, 52 Am. Dec. [Ill.] 476; *Wolford v. Crystal Lake Cemetery Ass'n*, 54 Minn. 440; *City of Cincinnati v. White*, 6 Pet. [U. S.] 431; *Hunter v. Trustees Sandy Hill*, 6 Hill [N. Y.] 407; *Buschmann v. City of St. Louis*, 26 S. W. Rep. [Mo.] 687; *Town of Lakeview v. Letz*, 44 Ill. 81; *Lambeau v. Lewinski*, 47 Ill. App. 656; *Gwin v. Melmoth*, 1 Freeman Ch. [Miss.] 505; *Rhodes v. Dunbar*, 57 Pa. St. 274; *Duncan v. Hayes*, 7 C. E. Greene [N. J.] 25; *Mohawk v. Utica*, 6 Paige Ch. [N. Y.] 554; *Nelms v. Clark*, 44 Ga. 617; *McDonough v. Robbens*, 60 Mo. App. 156; *Wolcott v. Melick*, 11 N. J. Eq. 204; *Attorney General v. Steward*, 20 N. J. Eq. 415; *Babcock v. New Jersey Stockyard Co.*, 20 N. J. Eq. 296;

*Ross v. Butler,* 19 N. J. Eq. 294; *Dana v. Valentine,* 46 Mass. 8; *Jung v. Neraz,* 71 Tex. 396; *Rodenhausen v. Craven,* 141 Pa. St. 546; *Barnes v. Hathorn,* 54 Me. 124; *Appeal of Pennsylvania Lead Co.,* 96 Pa. St. 116; *Clark v. Lawrence,* 6 Jones Eq. [N. Car.] 83; *Minke v. Hopeman,* 87 Ill. 450; *Randolph v. Rosser,* 7 Port. [Ala.] 249; *Duncan v. Greenwood,* 22 N. J. Eq. 25; *Windfall Mfg. Co. v. Patterson,* 47 N. E. Rep. [Ind.] 2; *McCutchen v. Blanton,* 59 Miss. 116; *Rouse v. Martin,* 75 Ala. 510.

*W. D. Beckett,* also for appellant.

*Francis A. Brogan, contra.*

References: *Laflin Co. v. Tearney,* 131 Ill. 322; *Adams v. Ohio Falls Car Co.,* 131 Ind. 375; *People v. Detroit White Lead Works,* 82 Mich. 471; *Wier's Appeal,* 74 Pa. St. 230; *Crump v. Lambert,* 3 L. R. Eq. Cas. [Eng.] 409; *House v. Metcalf,* 27 Conn. 639; *Commonwealth v. Upton,* 6 Gray [Mass.] 473; *Campbell v. Seaman,* 63 N. Y. 568; *Davis v. Londgreen,* 8 Neb. 43; *Farrell v. Cook,* 16 Neb. 483; *Sapp v. Roberts,* 18 Neb. 299; *Barton v. Union Cattle Co.,* 28 Neb. 350; *Beatrice Gas Co. v. Thomas,* 41 Neb. 662; *Welton v. Dickson,* 38 Neb. 767; *Anheuser-Busch Brewing Ass'n v. Peterson,* 41 Neb. 897; *Smith v. Phillips,* 8 Phila. [Pa.] 10; *Central R. Co. v. English,* 73 Ga. 366; *Coates v. Mayor,* 7 Cow. [N. Y.] *585; *Kincaid's Appeal,* 66 Pa. St. 411; *Humphrey v. Church,* 109 N. Car. 132; *Fertilizing Co. v. Hyde Park,* 97 U. S. 659; *Concordia Cemetery v. Minnesota & N. R. Co.,* 121 Ill. 199; *Woodlawn Cemetery v. Everett,* 118 Mass. 357; *Pottstown Gas Co. v. Murphy,* 39 Pa. St. 257; *Henry v. Trustees,* 48 O. St. 671; *People v. Detroit,* 82 Mich. 471; *In re Debs,* 158 U. S. 564; *Young v. Board,* 51 Fed. Rep. 585; *Schlessinger v. Mallard,* 70 Cal. 326; *Stockton v. Weber,* 98 Cal. 433; *Windt v. German Reform Church,* 4 Sandf. Ch. [N. Y.] 471; *Redwood Cemetery v. Bandy,* 93 Ind. 246; *Edwards v. Stonington Cemetery,* 20 Conn. 466; *State v. Bemis,* 45 Neb. 724; *State v. Baldwin,* 45 Conn. 134; *Campbell v. Kansas City,* 102 Mo. 326.

RAGAN, C.

The Prospect Hill Cemetery Association is a corporation organized under the laws of the state. As its name indicates, it is engaged in the business of interring the dead and in conducting and maintaining a cemetery in the city of Omaha. The space on the map following (p. 99), marked "Prospect Hill Cemetery," indicates the site of an old cemetery belonging to this corporation, which has been used for burying the dead for a long number of years, was established when the city of Omaha was a frontier town, and at the time such cemetery was established it was outside the residence portions of said city. The space on the map immediately south of Prospect Hill cemetery, marked "Addition to Cemetery," also belongs to the Prospect Hill Cemetery Association, and the land which that space represents is used by the cemetery association, and has been for a number of years, as a part of the original Prospect Hill cemetery. The cemetery association also owns the strip south of the addition and marked on the map "Land proposed to be used for burials." The association acquired the legal title to this property in 1895 and was taking steps to cause the same to be surveyed into burial lots, intending to sell those lots and bury therein the dead, when Jesse Lowe, Martin R. Pruitte, and Nathan Stevens, the owners of lots marked L., L., S., P., P. on map, in behalf of themselves and all others similarly interested and situated who might desire to come into the suit and contribute to the expenses thereof, brought this suit in the district court of Douglas county to enjoin the cemetery association from interring or permitting to be interred dead bodies in said strip of land south of the addition to said cemetery. Lowe and others based their right to the injunction asked on two grounds: (1) That interments in the strip of land proposed to be devoted to cemetery purposes would pollute and poison the water in the wells of Lowe and others, and that in other wells in the vicinity, in that disease germs

Lowe v. Prospect Hill Cemetery Ass'n.

N

W ← → E.

S

OMAHA VIEW.   OMAHA VIEW EXTENSION.

LAKE STREET.

L. 28.   L. 22.

L. 20.

PROSPECT

HILL   Cemetery

BURDETTE COURT
BURDETTE COURT ANNEX.

MAINS

LINDSAY AVE.

2ND ADD.

Additions to Cemetery.

BLONDO ST.

L. 34.

REEDS

LOWES

PARKER ST.

Land proposed to be used for burials.

ADD.

DECATOR ST.

3RD

ADD.

FRANKLIN ST.

or microbes would be carried from the decomposing interred bodies by moisture seeping from the graves through the pores of the soil into the wells; that thereby the health and lives of the inhabitants of such locality would be endangered, the comfortable use and enjoyment of their property would be interfered with, the neighborhood and locality would be rendered unhealthful, and the real estate, which in that vicinity was used exclusively for residence purposes, would be rendered valueless, and, therefore, the use by the said cemetery association of said lands for interring therein dead bodies would constitute a private nuisance at common law; (2) that the using of said land by said cemetery association for interring therein dead bodies would violate the ordinances of the city of Omaha. The district court entered a decree in accordance with the prayer of the petition of Lowe and others, and the cemetery association has appealed.

1. We dispose of the second ground on which the application for injunction was based first. We cannot see that it would subserve any useful purpose to set out in this opinion the history of the title of the cemetery association to this piece of real estate, and the argument of the association that to devote it to the purposes of interring therein dead bodies would not violate the ordinances of the city of Omaha. We have carefully studied both the history and the argument, and have not the slightest doubt that the ordinances of the city of Omaha forbid the cemetery association from interring dead bodies in the strip of land in controversy, and, without determining whether the appellees made such a showing as would entitle them to this injunction because the interring of dead bodies in the land by the cemetery association would violate the ordinances of the city of Omaha, we proceed to inquire whether the decree of the district court can be sustained upon the ground that the use proposed to be made by the cemetery association of its ground would constitute a private nuisance at common law, and that the appellees were entitled to the injunction given them upon that ground.

2. The appellant earnestly insists that the evidence in the record is insufficient to support the court's finding that the use of this strip of land by the cemetery association for interring therein dead bodies would probably or likely pollute and poison the water in the wells in the vicinity as claimed, and therefore the evidence does not sustain the court's finding that the proposed use of this land by the cemetery association would constitute a private nuisance. The undisputed evidence is that Prospect Hill cemetery is located on the crest of a hill; that the ground slopes rapidly in all directions; that the original cemetery, the addition, and the strip of land now proposed to be devoted to cemetery purposes are all higher than the property of the appellees and the other property in that locality; that the property on the east, south, and west of the strip of land proposed to be devoted to cemetery purposes is laid out in residence lots; that many of these lots are occupied for residence purposes; that the city of Omaha in the last fifteen years has so increased in population that the cemetery grounds are now within the residence district of the city; that the ground proposed to be devoted to cemetery purposes is sufficient for 2,000 interments. There is in the record a seeming conflict of evidence as to the nature of the subsoil or the earth underlying the cemetery and the lands in its immediate vicinity. The witnesses for the appellant made it out a dry, compact clay without seam, fissure, or pore. The witnesses for appellees, a porous one,—a loess containing about eighty per cent of silica and possessing great absorptive properties and powers. But the witnesses of the appellant on this subject were well and grave diggers and graders; they had no geological or scientific knowledge of the nature and properties of this soil. The evidence of appellees on this subject was scientific,—was of a character that convinces the understanding and convicts the judgment and leaves no doubt in the mind that the earth under the cemetery and the lands in its vicinity is a clay, highly silicious,

highly porous, and having great absorptive powers. In a geological sense it is loess. It is not an impervious soil; no "hard pan," for the depth of more than one hundred feet, is found below the surface of the earth at this cemetery. But this conclusion does not impugn the motives or veracity of appellant's witnesses. They did not see in this earth the silica as segregated sand, and thought there was none. They did not see seams and fissures in the earth, and concluded it was compact and practically impervious. Their evidence then, while honest enough, was, on this subject, of little value, because of their lack of scientific knowledge in the premises. No doubt these witnesses, and thousands of others, would honestly testify that a drop of clear water or a rosebud had in them no living organisms, and base their evidence on the fact that though they had seen millions of rose-buds and drops of water, they had never observed a living thing in either. These witnesses would perhaps have testified that a piece of polished steel had no pores in it; but what would this evidence be worth against that of a trained microscopist that the water and the rosebud were teeming with living animalcules and that the steel had millions of pores? The appellant's witnesses did not find in the wells and graves they dug streamlets flowing through visible fissures, did not find the earth water-soaked and wet, and therefore concluded that the rains and snows which fell on the surface did not sink into the earth, and that, therefore, there was no moisture in this subsoil; and yet on these grounds there were trees growing whose roots extended many feet below the surface. The inference of an absolutely dry soil was not the logical one from the established facts. The evidence of the appellees established another thing, namely, that if a well be sunk on these premises, the particles of moisture held in the soil of the well-wall would seep into the well, the spaces in the soil vacated by this moisture would at once be filled by the moisture in the soil adjoining, and these vacated spaces filled by the moisture in the adjacent

soil, and so on until such a well would establish for itself and into itself a drainage of moisture from a portion of the surrounding earth, cone-shaped, whose base would be the surface of the earth and whose diameter would be many times that of the depth of the well; that wells sunk on the premises of the appellees and on lands in their vicinity would thus drain into themselves moisture in the ground proposed to be used for cemetery purposes.

The evidence in behalf of both parties to this controversy shows, without conflict, that contagious and infectious diseases, such as typhoid and scarlet fevers and diphtheria, are caused by the presence in the system, blood, and stomach, of the human, of infinitesimal microscopic microbes, germs,—living organisms; that on the death of the human these germs multiply and reproduce themselves in countless numbers; that in the grave they flourish in the liquids of the decomposing body; that they live and flourish in any moisture; that they live for an indefinite length of time; that they become inactive when exposed to a condition of dryness, but upon coming in contact with moisture their activity revives; that some classes of these germs live in oxygen, some cannot live in that gas, and that some live either in or out of it; that such a soil as that underlying the cemetery in controversy is not a germicide,—that is, that the germ is not destroyed by coming in contact with that soil; that moisture sinking and seeping into the pores of the earth will carry these germs living and active from graves for considerable distances; that if moisture containing these germs seeps into a well, the germs will communicate to persons using the water the disease of which the body died from whence the germ sprang;—if the body died of consumption, the germ is a consumptive one, and will communicate that disease; if the body died of diphtheria, the germ is a diphtheritic one, and will communicate that disease;—that the substances best adapted for the transmission of these germs to the human are water and milk; that so infinitesimal and so persistent are these germs

that if vessels be rinsed in well water infected with them and then used for milk, they will or may be present in the moisture on the sides or bottom of the vessel and thus get into the milk and communicate to one drinking it the disease of which they are the product.

There is a sharp conflict in the evidence on this question, namely, whether these germs were likely to or would probably be carried by the liquid of the decomposing bodies and other moisture seeping into the graves and thence sinking into the earth from the graves to the wells of appellees,—the nature of the soil, the contour of the cemetery grounds, the quantity of liquid matter set free by decomposing human bodies, and the annual precipitation of moisture considered. The evidence shows that about eighty per cent of the human body is liquid, and that the annual precipitation of moisture is twenty-three inches plus; and experiments show that soil which has been cultivated or dug up will absorb nine or ten times the amount of the moisture which falls upon it that the unbroken sod will. (Aughey, Sketches of the Physical Geography and Geology of Nebraska 45.) The witnesses for appellant gave it as their opinion that these germs were not likely or would not find their way from the graves to the wells. The witnesses of appellees were of the contrary opinion. The district court adopted the opinion of appellees' witnesses. We cannot say that it erred in this. Indeed we think it did not. The evidence showed that some years before this trial occurred such diseases as typhoid and scarlet fever and diphtheria were more prevalent in the vicinity of what is now the old cemetery than elsewhere in the city of Omaha; that the families afflicted with those diseases used water from wells, and an eminent physician testified that, in his opinion, such diseases were communicated by germs which had found their way from the old cemetery to the wells.

Counsel for appellant say that the finding of the district court rests upon "theories of self-styled experts."

We think this criticism unwarranted. The physicians who testified in this case—Crummer and Summers for appellees and Grossman for appellant, not to mention others—were not physicians of the ordinary type. They were and are men deeply learned in the nature and cause of disease. They are not merely physicians, but they are scientists. The evidence given by them did not consist of theories evolved from their inner consciousness. Their evidence did not consist of guesses and conjectures. As witnesses they detailed the results of scientific experiments; they gave the logical scientific results deducible from established facts; they told what answers Nature had given to scientific inquiries put to her by men skilled in scientific pursuits. The evidence of these men was not that of the ordinary expert called to give his opinion about a matter of common knowledge, and in the presence of the knowledge and opinions of such men as these witnesses the criticism of the advocate and the preconceived opinions of the judge should yield. We are of opinion that the evidence amply sustains the district court's finding that the proposed use by appellant of its ground for interring therein dead bodies would probably result in contaminating the water of appellees' wells, and that of others in the vicinity, with disease germs, and thus endanger the health and lives of appellees and their families.

3. These facts established, the law of the case is simple. We cannot better express our views on this subject than to quote from the opinion in *Clark v. Lawrence*, 6 Jones Eq. [N. Car.] 83, which was an action to enjoin parties from maintaining a cemetery. The court said: "The jurisdiction of a court of equity to restrain by an injunction the erection or continuance of a nuisance, either public or private, which is likely to produce an irreparable mischief, is well established. It is equally well settled that the destruction of, or injury to, the health of the inhabitants of a city, or town, or of an individual and his family, is deemed a mischief of an irreparable char-

acter.   *   *   *   In cases of this kind the plaintiff will
not have to encounter the difficulty that a place for the
burial of the dead, within the limits of a city or town, or
near the residence of a private person in the country, is
considered a matter of public weal.   On the contrary,
the public sentiment is already, or is becoming to be,
in favor of more secluded spots, where we, like the patri-
arch of old, 'may bury our dead out of our sight.'   When-
ever, then, it can be clearly proved that a place of sepul-
ture is so situated that the burial of the dead there will
injure life or health, either by corrupting the surround-
ing atmosphere or the water of wells or springs, the
court will grant its injunctive relief upon the ground
that the act will be a nuisance of a kind likely to produce
irreparable mischief, and one which cannot be adequately
redressed by an action at law." (See, also, *Laflin & Rand
Powder Co. v. Tearney*, 131· Ill. 322; *Jung v. Neraz*, 71 Tex.
396; *Barnes v. Hathorn*, 54 Me. 124.)

In *Gilford v. Babies' Hospital*, 21 Abbott New Cas. [N.·
Y.] 159, the court enjoined the proposed opening of a hos-
pital for the care of infants on the ground that the local-
ity in which it was proposed to locate the hospital was a
residential locality, and that the probability of contagious
diseases being disseminated in the neighborhood would
threaten the comfort and security of the inhabitants.

In *Hurlbut v. McKone*, 55 Conn. 31, the maintenance of
a planing and moulding mill near the plaintiff's home
was enjoined as a private nuisance on the ground that
the smoke and dust from it interfered with the comforta-
ble and reasonable use and enjoyment of the plaintiff's
home.

In *Rodenhausen v. Craven*, 141 Pa. St. 546, the establish-
ing of a carpet-cleaning establishment in the residence
locality of the city was enjoined upon the ground that the
dust arising from the cleaning of carpets would invade
the homes of the people living near by and disturb their
reasonable enjoyment of their homes.   To the same effect
see *Haugh's Appeal*, 102 Pa. St. 42; *Appeal of Pennsylvania*

*Lead Co.*, 96 Pa. St. 116; *Adams v. Ohio Falls Car Co.*, 131 Ind. 375; *Clowes v. Staffordshire Potteries Water-Works Co.*, 8 L. R. Ch. [Eng.] 125.

In *Farrell v. Cook*, 16 Neb. 483, the owner of some jacks and stallions was enjoined from keeping and standing them for mares in view of the plaintiff's dwelling, upon the ground that such a use of the defendant's property offended against the laws of decency, and was therefore a private nuisance.

In *Barton v. Union Cattle Co.*, 28 Neb. 350, it was ruled that the pollution of a stream of water by discharging into it the dung, urine, etc., of a large feed stable, thus rendering the water unfit for use and creating a stench, constituted a nuisance and should be enjoined.

In *Anheuser-Busch Brewing Ass'n v. Peterson*, 41 Neb. 897, it was held that the befouling of a well or cellar by filthy and noxious matter permitted by the defendant to percolate through the adjacent soil constituted a nuisance.   To the same effect is *Beatrice Gas Co. v. Thomas*, 41 Neb. 662.

These cases then are authority for the proposition that the use made by one of his property which works an irreparable injury to the property of his neighbor, the use made by one of his property whereby the unwritten but accepted law of decency is violated, the use made by one of his property whereby his neighbor is deprived of the reasonably comfortable use and enjoyment of his own property, the use made by one of his property which will probably or likely endanger the health and the life of his neighbor, are private nuisances and may be enjoined.

4. Counsel for appellant say that the special injury apprehended or charged to exist must not be a conjectural, contingent, or doubtful one, but be established by satisfactory evidence.   We concede the correctness of this argument, but we think the evidence in this case brings the appellees within the contention of counsel.

5. Again it is argued that if the alleged evils are apprehended the proofs must be strong and conclusive that

the use to which it is proposed to put the property will produce the alleged nuisance, and that the courts must wait until an experiment has demonstrated that the use will prove a nuisance. To this last contention we do not subscribe. We think the rule is that a court of equity has jurisdiction to enjoin a threatened injury whenever its nature is such that it cannot be adequately compensated for in damages and its continuance would occasion a constantly recurring grievance. (See the rule stated and the authorities collated in 10 Am. & Eng. Ency. Law 835.)

6. Another argument is that when one asks for an injunction to protect him from an apprehended danger the court will not grant the injunction if it be doubtful whether the apprehended injury will occur, and in support of this counsel cite us to *Rogers v. Danforth*, 1 Stockt. Ch. [N. J.] 289. In that case an injunction was sought by the plaintiffs to prevent the defendant from erecting on their lots buildings for the purposes of carrying on therein a factory for the manufacture of locomotive engines and other kinds of machinery. It was alleged in the bill that the proposed building would be within a few feet of the plaintiffs' property, which was a cotton mill, and that the forges and furnaces of the defendant would be dangerous to the complainants' cotton mill, subjecting it to imminent risk from fire and cinders escaping from the forges and furnaces. The injunction was denied because the evidence did not show that the plaintiffs' property would probably be endangered by the erection and operation of the forges and furnaces. But that is not this case. Here the evidence is that if the cemetery association is permitted to bury dead bodies upon the strip of land in controversy, the disease germs already mentioned will probably or likely be transmitted from the dead bodies by the moisture in the earth into the water of the wells of the appellees, and if this occurs and the water be used, it will certainly infect the users of the water with dangerous diseases.

7. Another argument is that the granting or refusing

of such an injunction as the one in the case at bar is discretionary with the trial court, and in support of that contention we are cited to *Torrey v. Camden & A. R. Co.*, 18 N. J. Eq. 293; *Hine v. Stephens*, 33 Conn. 497; *Cobb v. Smith*, 16 Wis. 692. The decisions cited sustain the contention of counsel, and we have no fault to find with those decisions as applied to the facts of the cases in which they were rendered; but if the power to grant an injunction is discretionary, it is a legal discretion, and in this case we certainly cannot say that the court abused its discretion in granting this injunction.

8. Another argument is that the appellees have a complete and an adequate remedy at law, and in support of this contention we are cited to *Wing v. Inhabitants of Fairhaven*, 8 Cush. [Mass.] 363. In that case the owner of a mill-dam sought an injunction to restrain the defendant from opening certain sluices, and it was claimed that if this was done the water would flood highways and thus make the dam a nuisance. The court denied the injunction upon the ground that such damages could be compensated in money.

Another case cited is *Dana v. Valentine*, 5 Met. [Mass.] 8. In that case the plaintiff sought an injunction to restrain the exercise of an offensive trade near his dwelling-house on the ground that it would be a nuisance to him. The defendants' defense was a prescriptive right to exercise the trade at that place, and the court held that the injunction would not issue until the complainant had established his right to redress in a suit at law.

Another case cited is *Laughlin v. President & Trustees of Lamasco City*, 6 Ind. 223. In this case the city of Lamasco sought to enjoin the defendants from constructing a wharf. The court said: "The wharf in question appears to encroach in some measure upon the public thoroughfare known as the Ohio river. But it does not seem very probable that it will interfere with or incommode the public. And as the wharf is not a nuisance in itself—is not likely to become so—and the alleged injuries feared

as impending being, according to the case made by the affidavits, more fanciful than real, we think it one of the cases contemplated by the authorities, in which a court of equity will refuse to act without an adjudication at law.   If the complainants place it on the ground of a private nuisance, they concede too much.   For it is not to prevent every inconvenience or injury that the courts will interpose by injunction.   That extraordinary power will be exercised in such cases only as cannot be adequately compensated, and thus their repetition or continuance prevented, by damages at law."

Still another case cited is *Dunning v. City of Aurora,* 40 Ill. 481.   In that case the plaintiff sought to have the court declare a nuisance and order removed certain wooden buildings which had been removed from one place in the city of Aurora and located on lots near the complainants' property.   The court declined to pass upon the question as to whether the wooden buildings constituted a nuisance and remanded the case to the *nisi prius* court to have that fact determined by a jury.   The court, however, said that where a building which has been erected is complained of as a nuisance a court of equity would not, unless in an extreme case, interfere to remove it.   If it were to be occupied for a business, or for a storage of dangerous combustibles, which might endanger the lives of persons or the destruction of property in the vicinity before the question could be passed upon by a jury, it might be otherwise.

Not one of these cases is of controlling authority here. The claim in this case is that the use which the appellant proposes to make of its property will probably or likely poison the waters in the wells of the appellees with the disease germs from the cemetery and thus destroy the health, if not the lives, of the appellees and their families. What remedy does the law afford for this injury?   Will a money judgment compensate the appellees for the loss of a wife or child?   In this connection it seems to be the contention of counsel for appellant that the appellees

may abandon the use of their wells and procure water from the city water-works, and that their expenses and damages in this respect can be fully compensated in an action at law against the appellant.   This argument is technically correct.   No doubt the appellant may make good to the appellees all the costs, expenses, and damages which they would sustain by abandoning the use of their wells and procuring water from the city water-works.   But this argument would wipe out of existence the law of private nuisance, because it assumes that if one is able to pay his neighbor the full value of his property, he then may erect and carry on upon his property any such business as he chooses, no matter how offensive it may be; no matter if the conduct of the business would endanger the life and health of a neighbor, since he can compensate this neighbor in damages by paying him the full value of his property and the neighbor may go elsewhere.   In other words, it denies the neighbor the right to the reasonable use and enjoyment of his property and compels him, whether he wishes or not, to sell his property to the party who wishes to erect a slaughter-house or other offensive institution on an adjoining lot. We do not understand that either courts or legislature, except on the demand of the sovereign and for its use, can compel one citizen, even for a valuable consideration, to sell his property to his neighbor for his private use. The appellees are entitled to enjoy the light and the air over their premises, and entitled to enjoy the water beneath the surface of their premises; and in order that their neighbors may devote their lands to the burial therein of the dead the appellees cannot be compelled to surrender their rights under the earth, nor over it, even if fully compensated.

9.  Another argument is that the appellees cannot maintain this suit because it is said that the appellees Pruitte and Stevens are not the owners of the title to the premises occupied by them.   At the time of the institution of this suit Pruitte was occupying under a contract of

purchase. He had paid the purchase-money and made improvements upon the real estate, but his contract was held in trust for him by his mother, who lived in his family. Stevens had fee simple title to his property, but at the time this suit was brought a proceeding to foreclose a mortgage on the lot had been instituted, gone to decree, and before the trial, at least, the sale of the property occurred; an appeal had been taken from this to the supreme court and the sale superseded by bond. Notwithstanding all these things Pruitte and Stevens, at the time this suit was brought and at the time of the trial, were the owners of the real estate upon which they resided. (*Philadelphia Mortgage & Trust Co. v. Gustus*, 55 Neb. 435; *Leader v. Tierney*, 45 Neb. 753.) We do not understand that to enable the plaintiff to maintain a suit like this it is necessary that he should be vested with the legal title to the real estate upon which he lives. The object of this action—and such actions as this—is to prevent the defendant from putting his property to such a use as would disturb the plaintiff in the reasonable use and occupation of the property on which he resides, and we see no reason why a tenant for years or for life rightfully in possession of real estate might not maintain such an action as this. (*Jung v. Neraz*, 71 Tex. 396; *Smith v. Phillips*, 8 Phila. [Pa.] 10; *Central R. Co. v. English*, 73 Ga. 366.)

The decree under consideration does not rest solely upon the proposition that to permit the appellant to use his property for cemetery purposes would depreciate the value of the real estate of the appellees, but it is grounded upon the theory that to permit the appellant to use its property for cemetery purposes would deprive the appellees of the reasonably comfortable use and occupancy of the premises of which they are in the rightful possession and endanger their health and lives and that of their families.

10. A final contention of the appellant is that it is not the interments themselves which would constitute

a nuisance but the methods of those interments, and that the court should not have enjoined interments absolutely or unconditionally, but only interments in such a method as would constitute a nuisance, and it is insisted that the decree of the district court should be so modified as to permit the appellant to use its grounds for the purposes of interring dead bodies therein under such rules and regulations as may be prescribed by the board of health of the city of Omaha. A sufficient answer to this contention—if we concede, which we do not, that this would be a defense—is that no such an issue was tendered by the pleadings in this case. The appellant, in its answer, did not suggest to the district court that it could make, or cause to be made, interments in its grounds in such a manner that no injury would result therefrom; nor did the appellant in its answer suggest to the district court that the board of health of the city of Omaha had prescribed any rules or regulations for the interment of dead bodies, much less that they had prescribed rules and regulations which, if complied with, would render the interment of dead bodies in the grounds of the appellant harmless. The defense is one in the nature of a confession and avoidance and one the appellant should have set up in its answer in the court below. We cannot determine from this record whether the appellant may make interments in its grounds in such manner that they will be harmless. We must decide the case on the record before us. The decree must be, and is,

AFFIRMED.