HENRY N. PAYNE ET AL., v. TOWN OF WAYLAND, Appellant.

**Cemeteries:** LOCATION: NUISANCE: INJUNCTION: EVIDENCE. Equity
1   will enjoin a municipal corporation from locating and maintaining a cemetery at a place where it is shown that a burial of the dead will result in irreparable injury, to those living in the vicinity, by polluting of the water, on the ground of nuisance.   Evidence reviewed and held sufficient to warrant equitable relief.

**Nuisance:** ABATEMENT: ESTOPPEL. One purchasing land in the
2   vicinity of an established cemetery is not presumed to know that it was in fact a nuisance so as to estop him from maintaining a suit to abate the same, or to enjoin an extention of the cemetery by the use of additional land.

*Appeal from  Henry  District  Court.*— HON.  JAMES  D. SMYTH, Judge.

FRIDAY, OCTOBER 19, 1906.

SUIT in equity to enjoin the defendant from using certain land for cemetery purposes.   Judgment for the plaintiffs, from which the defendant appeals.— *Affirmed.*

*Babb & Babb,* for appellant.

*Palmer & Kopp,* for appellees.

SHERWIN, J.— The defendant is a town duly incorporated under the law of the state, and in virtue of the authority

conferred upon it by chapter 10 of the Code it purchased land to be used by the inhabitants of the town for the burial of their dead. The plaintiffs are residents within or near the corporation, and brought this action in equity to restrain the defendant from using the land in question for cemetery purposes, alleging, in substance, that the land lies near the northern limits of the town, and in immediate proximity to the wells and other sources of domestic water supply of the inhabitants thereof; that south and southwest of said tract of land the streams and surface water draining said land, reinforced a short distance by certain springs, combine to form a stream of running water during many months of the year; that this stream, flowing in a westerly and southerly course through said town and the public pastures adjacent thereto, is a source of water supply to cows pastured therein; and that the principal residence district of said town lies to the south and southwest of said proposed burial ground and partly along said stream. It is further alleged that if burials of the dead are made in said tract of land, as proposed, it will pollute and poison the wells of plaintiffs, and will pollute and poison the streams and springs below said tract of land; that said springs are used for domestic purposes and a water supply for cows; that microbe germs and other sources of pollution may be carried from the dead human bodies interred therein, through the soil, to said wells and springs and streams; that thereby the health, lives, and welfare of the inhabitants would be endangered and liable to infectious diseases from contaminated water, and real estate used for residence purposes would be greatly lessened in value — all to the irreparable injury and damage of the plaintiffs. The issue tendered by the answer, so far as it is material for present purposes, is a denial that the land is unsuitable for burial purposes or unsuitably located therefor, and a denial that burials therein will endanger the health or property of the plaintiffs. The answer also avers that the same stream which passes through a part of this ground also

drains the old cemetery, of which this has become a part, and has so drained it for many years without any injurious effects.

There does not seem to be any serious disagreement between counsel as to the law governing this case; the principal bone. of contention having reference to the sufficiency of the evidence in support of the finding of the trial court. Code, section 697, authorizes cities and towns to provide places for the interment of the dead and to adopt regulations for their burial; and the authority thus given carries with it discretionary powers, which will not ordinarily be interfered with by the courts. But a statute will never be construed to authorize the creation and maintenance of either a public or a private nuisance, unless it expressly so declares, or a nuisance the natural and probable result of the fact authorized. In other words, the Legislature will never be presumed to have intended to authorize a nuisance, particularly a private one. *Miller v. City of Webster City,* 94 Iowa, 162. It is a well-settled rule that a cemetery is not a nuisance *per se,* and it cannot be presumed that the Legislature, in authorizing cities and towns to provide burial places for the dead, contemplated that they would be so located as to be private nuisances. We need not now discuss the power of the Legisislature to itself create, or to authorize another to create, a private nuisance without compensation to the injured party; for it is evident that no such power is conferred by our statute.

The question, then, is limited to the single proposition whether equity will restrain a nuisance of this character. That it will is abundantly determined by our own cases and by the weight of authority elsewhere. *Shiras v. Olinger,* 50 Iowa, 571; Miller v. Webster City, *supra; Lowe v. Prospect Hill Cemetery Association,* 58 Neb. 94 (78 N. W. 488, 46 L. R. A. 237); *Laflin & R. Powder Co. v. Tearney,* 131 Ill. 322 (23 N. E. 389, 7 L. R. A. 262, 19 Am. St.

1. CEMETERIES: location: nuisance: injunction: evidence.

Rep. 34); *Barnes v. Hathorn*, 54 Me. 124; *Hurlbut v. McKone*, 55 Conn. 31 (10 Atl. 164, 3 Am. St. Rep. 17); *Rodenhausen v. Craven*, 141 Pa. 546 (21 Atl. 774, 23 Am. St. Rep. 306). In *Clark v. Lawrence*, 59 N. C. 83 (78 Am. Dec. 241) the action was to enjoin the maintenance of a cemetery. The court said: " The jurisdiction of the court of equity to restrain, by injunction, the erection or continuance of a nuisance, either·public or private, which is likely to produce an irreparable mischief, is well established. It is equally well settled that the destruction of, or injury to, the health of the inhabitants of a city or town, or of an individual and his family, is deemed a mischief of an irreparable character. . . . Whenever, then, it can be clearly proved that a place of sepulture is so situated that the burial of the dead there will injure life or health, either by corrupting the surrounding atmosphere or the water of wells or springs, the court will grant its injunctive relief, upon the ground that the act will be a nuisance of a kind likely to produce irreparable mischief, and one that cannot be adequately redressed by an action at law." This is, in reality, an application of the rule that every one must so use his own property as not to unreasonably interfere with his neighbor's comfortable and reasonable enjoyment of his property. It is, and must be, conceded that, to warrant the interference of chancery, the evidence must be clear and convincing and establish the nuisance beyond serious question. If the injury be doubtful, eventual, or contingent, equity will not lend its aid, in a case of this nature.

The evidence is voluminous, but on many of the important features of the case it is not in serious conflict. The new cemetery adjoins the old one, and both are within the corporate limits of the town. The ground selected for the new cemetery is located on a mound between two natural water courses or streams, and there is no question but that the natural drainage of the entire tract is into these streams, as alleged in the petition. The evidence is overwhelming

as to the character of the soil.   The upper layer is black loam, from four to eight or ten inches thick, and the subsoil is clay, with a considerable mixture of sand, or, as described by many of the witnesses, it is sandy clay.   It is also shown that such soil is well adapted for conveying water.   It is also proven that at the south side of said ground an examination showed the soil to be porous and wet, indicating clearly that water percolated through the soil from above to the point where the examination was made.   It is also shown that the ground along the stream below the cemetery is "spongy, sprouty, and springy."

The movements of subsurface waters are commonly somewhat obscure, but it is a well-known fact that the percolating water will travel great distances and that it forms channels for itself.   Medical scientists are now practically agreed that infectious diseases are germ diseases, and that the live germs may remain in the human body after death and interment, and be carried therefrom in water to the streams and wells below.   A mere statement of the location of this land and of the character of its soil and drainage clearly indicates to our minds that the burial of human bodies there will surely tend to contaminate the wells, springs, and streams receiving its drainage, and be a menace to the health of those using the water therefrom.   In addition to this, however, the disinterested scientific evidence, and, indeed, the weight of the entire evidence, sustains this conclusion.   There is some evidence in the record tending to show that burials may be made in this new cemetery in such a way as to practically avoid the threatened danger, and that a system of filtration might be used which would accomplish the same result.   But there is no showing that the city can or will adopt either of the two courses.

It is also contended that the plaintiffs purchased with full knowledge that the old cemetery was a nuisance, and they are, therefore, in no situation to complain of the new one.   There is no evidence before us tending to show that

any of the plaintiffs knew when they purchased their property
that the old cemetery was a nuisance. They

**2. NUISANCE:**
   **abatement:**
   **estoppel.**

undoubtedly knew where it was; but it was
not a nuisance *per se,* and it will not be pre-
sumed that they had knowledge that it was a nuisance in
fact. Furthermore, no issue in the nature of an equitable
estoppel was tendered by the defendant. But, even if the
plaintiffs were aware of the conditions created by the old
cemetery, it does not follow that they must submit to an en-
larged danger.

We think the trial court reached the right conclusion,
and the judgment must be, and is, *affirmed.*