Johnson, J.
The Toledo Disposal Company is a corporation organized to operate a reduction plant. In 1910 it entered into a contract with the city of Toledo, under specifications ' prepared by the city, for the disposal of its garbáge waste by a process of reduction. Thereupon the company constructed a plant at an expense of about $150,-000. On the trial the company offered evidence showing that the plant was built and equipped *232 with approved machinery, which was made upon modern, sanitary and scientific lines; that the location,. construction and operation were prescribed, supervised and regulated by the city of Toledo and that the plant was operated carefully and skillfully. The director of public service as a witness in the case expressed his approval of the manner in which the work was conducted and his opinion that its conduct did not constitute a nuisance. The contract expressly stipulated that the disposal of the garbage should be under the control of the director of public service.
The contract and the ordinance and resolutions under which it was made, were offered in evidence by defendant and rejected by the trial court, as was also the testimony that the plant was operated with care and skill.
Counsel for defendant in error concede in their brief, for the sake of the argument, that the “plaintiff in error could show that its plant and business were located, constructed and conducted so. as to produce the least possible annoyance.”
The trial court refused the request of defendant to charge the jury that “The defendant was, during the time laid in the indictment, expressly authorized to conduct the business in which it was then engaged. It cannot therefore be prosecuted or punished merely for conducting said business, and if the jury find by a preponderance of the evidence, that the defendant conducted said business at the best available location, by the use of the best available machinery, equipment and appliances, and in a skillful and careful manner, with reference to preventing the escape of odors, and *233 if you find that the conduct of said business created no more odors than were necessarily incident to such conduct of said business, your verdict must be for the defendant.”
The court charged the jury that “if the smells indicated did emanate from this building, and if they .were offensive to the general public, it is immaterial for your consideration how the business was conducted and what kind of machinery was used by defendant in the conduct of its plant.”
The refusal to charge as requested and the quoted part of the general charge given to the jury indicate the views of the courts below on the important matter under consideration.
The contract referred to was made by the city under express legislative authority.
Section 3649, General Code, authorizes municipal corporations to establish, maintain arid regulate plants for the disposal of sewage, garbage and similar refuse matter. Section 3677 provides that municipal corporations shall have special power to appropriate and hold real estate within their corporate limits for many purposes, among which are specified “sewage and garbage disposal plants and farms.” Section 3678 enacts that in the appropriation of property for- any of the purposes named in the preceding section the corporation may when reasonably necessary acquire property outside the limits of the corporation.
Section 3809 authorizes a city to make a contract with any person, firm or company for the collection and disposal of garbage in such cor *234 poration. Construing the sections above referred to in pari materia, it is manifest that the legislature intended to provide for the disposal of garbage that should gather and be collected in the corporation, but not to restrict the place of disposal.
The- question is, therefore, clearly presented whether the state can maintain a criminal prosecution against a defendant for conducting a plant and business located, constructed and operated under an express contract with a municipality made under legislative authority, when the plant is conducted under municipal control and regulation, with care and skill, and in such manner as to produce the least possible annoyance, such authority having been given and such contract having been made for the purpose of conserving the health and comfort of the public.
The inception, the creation and the maintenance of'this business was a public undertaking in the interest of the public health and the general welfare. Any benefit that defendant company may have received from the operation of the plant was purely secondary and incidental. The compensation it received from the city, $5,800 per year, was paid as the contract price is paid for any other public work done under legislative authority. Every essential connected with the enterprise that is related to the public health and comfort rested in the control of the city. In addition the contract secured to the city the right at any time after two years, when permitted by law, to take over the plant at a valuation to be determined in a manner inrovided for.
*235 An order which abates the unavoidable incidents of a business when conducted with all possible care and skill, operates to prohibit the business itself, and in this case denies to the city of Toledo the right to avail itself of the provisions of the wholesome and beneficent statutes touching the subject.
Nothing is more firmly established than, that the state and municipal authorities, in the exercise of the police power, may make all such provisions as. may be reasonable, necessary and appropriate for the protection of the public health and comfort.
In California Reduction Co. v. Sanitary Reduction Works, 199 U. S., 306, Justice Harlan says: “This court has said that the possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community.’ ” It is further said: “‘Every intendment is to be made in favor of the lawfulness of the exercise of municipal power making regulations to promote the public health and safety.’ ”
The mode of disposing of garbage and refuse matter is one of the difficult questions involved in municipal sanitation. Its great importance is not doubted. It is true that there has not yet been complete agreement as to the best and most appropriate method for the disposal of garbage and refuse material, but the testimony tendered and rejected shows that the city of Toledo made every effort to proceed on the most modern and scientific plan. The city in the discharge of its duty to safeguard the health of its people pursued the *236 course pointed out by the state. There is no ground to question the good faith of all concerned. The entire enterprise has a “real and substantial relation” to the very proper object for which it was instituted; and under the rule stated every intendment is to be made in favor of its lawfulness. There are no common-law crimes in Ohio. No act can be punished criminally except in pursuance of a statute or ordinance lawfully enacted. Mitchell v. State, 42 Ohio St., 383, and cases there cited.
It would seem to be incontrovertible that the court would not construe that to be a crime punishable under one statute which was done in the exercise of powers specifically granted by another statute. Such a holding would be contrary to established rules of construction. It would in effect attribute to the legislature a disregard of wise public policy.
In Joyce on Nuisances, Section 67, the rule is stated: “It is a general rule that an act which has been authorized by law cannot be a public nuisance, and that the state cannot prosecute as a nuisance that which it has authorized. So, it has been decided that works of internal improvement which have been erected by the state for the benefit of its citizens do not become a public nuisance from the fact that the neighborhood is thereby rendered unhealthy by the obstruction of running water and consequent overflowing of adjoining lands, and that the character of such works is not changed by the fact that they are transferred to a private corporation which is required to maintain the same for the purposes of their creation.” *237 This rule is also declared in Sopher v. State, 169 Ind., 177; Miller v. Webster City, 94 Ia., 162; Stoughton v. State, 5 Wis., 291.
The proposition stated does not involve the conclusion that a person injured specially and in a different way than the public would not be entitled to recover damages in a civil suit, if the work is done in an improper manner or so as to cause unnecessary disturbance or discomfort to such person.
The doctrine is stated in Blanc v. Murray, 36 La. An., 164, as follows: “That which is authorized by the legislature, within the strict scope of its constitutional power, cannot be a public nuisance, but it may be a private nuisance, and the legislative grant is no protection against a private action- for damages resulting therefrom.” The distinction here pointed out is also stated in Baltimore & Potomac Rd. Co. v. Fifth Baptist Church, 108 U. S., 317, and in Bohan v. Port Jervis Gas Light Co., 122 N. Y., 18.
At Section 69 of his work, Joyce says: “It is a general rule that where an act is made lawful by legislative sanction, annoyances in connection therewith must be borne by the individual subject to this qualification that the act must be done without negligence or unnecessary disturbance, by the one doing it, of the rights of others.”
There is a distinction between a case in which the thing complained of is done under a general act of the legislature and one in which it is done under a special law of the state or under a special contract made under sanction of the state, in which the particular thing done and the manner of doing it is defined. In the former case the general law *238 will not justify the doing of the thing in such a way as to produce a nuisance or cause injury, while in the latter it is held that the governmental authority had in view the consequences which were to follow from the doing of the particular thing and that the state cannot sustain a criminal proceeding for the doing of the thing specifically authorized. Stoughton v. State, supra; 29 Cyc., 1198.
A majority of the learned circuit court were of the opinion that the case of Garrett v. State, 49 N. J. Law, 94, declared the principles that rule the case at bar. In that case defendant was indicted for creating a public nuisance in operating a .factory for the manufacture of fertilizers from dead animals and filth, which produced a public nuisance.
The defendant claimed that he had been licensed by the board of health of the county to carry on the business, and that the license was a defense to an indictment for nuisance during its continuance. The trial court refused the request of defendant to so charge, and that ruling was affirmed. The court say: “The, defendants invoke in their behalf a recognized principle that a public nuisance must be occasioned by acts done in violation of law, and that any business or pursuit which is authorized by law cannot be such nuisance. It is not denied that the legislature have the power to make lawful, so far as the public is concerned, a work or business which by the common law would otherwise be. a public nuisance.’’ The court further say: “What he asks-the court to declare to the jury as a legal rule for their guidance is *239 that the license of this board to carry on a particular business is, under any and all circumstances, a protection against an indictment for nuisance growing out of such business. It left no room for the consideration of unnecessary or even reckless injury to the public in the mode of manufacture. This is the plain meaning of this request, and had it been put to the jury as asked, no matter how wilful or extensive the offense to the public may have been, it demanded, in virtue of the licenses, the acquittal of the plaintiffs in error.” The business licensed in the Garrett case was a purely private business for private profit, not in the interest of the public health or for the public welfare.
It at once appears, therefore, that the decision in the Garrett case rests upon a different state of facts entirely from those involved in the case we have in hand, and did not involve the application of the same principles.
In this case the primary object in the establishment of the disposal plant was purely a public object in the interest of the public. This was the sole purpose which called forth the exercise by the legislature of its police power. The concession that the plant and business were located, constructed and conducted so as to produce the least possible annoyance compels the conclusion that in the whole enterprise there has been careful regard for every interest. Under the judgment and order in this case it would doubtless be impossible to operate the plant.
For obvious reasons the legislature has enacted laws to prevent the pollution of streams and this *240 -court .has enforced common-law and statutory rules looking to the same end.
In view of this situation, if the action of the trial court in the rejection of the evidence referred to and in the refusal to charge as requested, as well as in the charge itself, is sustained, it is difficult to see how our cities can avail themselves of the wise and necessary provisions which the state has made to assist in the effort to prevent nuisances and preserve the health of its people.
The judgments of the courts below will be reversed and defendant discharged.

Judgments reversed.

Nichols, C. J., Shauck and Wilkin, JJ., concur.